Kent E. PRICE, Appellant–
Defendant Below,

v.

Spencer ARONSON, Appellee–
Plaintiff Below.

No. 71A03–9303–CV–00103.

Court of Appeals of Indiana,
Third District.

Feb. 24, 1994.

James A. Masters, Nemeth, Masters & Leone, South Bend, for appellant-defendant.

David L. Mirkin, Kimberly A. Harding, Mirkin, Tuesley & Mirkin, P.C., South Bend, for appellee-plaintiff.

STATON, Judge.

Kent Price appeals the judgment of the trial court in Spencer Aronson's negligence and breach of contract actions. Price presents for our review the sole issue of whether the trial court erred in entering judgment against him personally for Aronson's damages.

We reverse and remand.

Corbitt's Body Shop, Inc. was an Indiana corporation that had Kent Price and his wife, Sandra, as its sole shareholders, directors and officers. On April 6, 1990, Spencer Aronson obtained from the body shop an estimate for restoring his 1957 Chevrolet. When Aronson stopped by the body shop a few months later to check on the progress of the restoration, he noticed that the sign on the front of the store had been changed to "Shadow's Body Shop". Record, p. 114. Aronson also was given a business card reflecting this new name.

After Aronson's vehicle was damaged by the work performed at the body shop, he brought this negligence and breach of contract action, naming "Kent E. Price, d/b/a Corbitt's Body Shop, Corbitt's Body Shop, Inc., and Shadow Body Shop, and Corbitt's Body Shop, Inc." as defendants. Record, p. 7. In its amended judgment, the trial court found in favor of Aronson and against Kent Price and Corbitt's Body Shop, Inc., jointly and severally. The trial court entered judgment against Price personally because: (1) the sign on the front of the shop, the business cards and the other documentation therefrom did not indicate that the body shop was incorporated, as required by IND.CODE 23–1–23–1 (1988); (2) neither Price nor his employees informed Aronson that he was dealing with a corporation; and (3) a certificate for assumed business name was not filed with the state until May 3, 1991, in contravention of IND.CODE 23–15–1–1 (Supp. 1992). Price appeals the judgment entered against him personally; the corporation has not appealed.

■ Indiana courts are reluctant to disregard corporate entity. *Gurnik v. Lee* (1992), Ind.App., 587 N.E.2d 706, 710. "A party seeking to pierce the corporate veil bears the burden of establishing that the corporation was so ignored, controlled or manipulated that it was merely the instrumentality of another, and that the misuse of the corporate form would constitute a fraud or promote injustice." *Id.*

■ First, Aronson contends that the following language from IC 23–1–23–1(a) mandates that a business' signs and cards reflect its corporate status: "a corporate name must contain the word 'corporation', 'incorporated', 'company', or 'limited', or the abbreviation

'corp.', 'inc.', 'co.', or 'ltd.', or words or abbreviations of like import in another language...." The parties do not cite, nor have we been able to find, any cases in Indiana that have addressed whether the failure to comply with IC 23–1–23–1(a) justifies piercing the corporate veil. We therefore look to other jurisdictions for guidance.

In *Fairbanks v. Chambers* (1984), Mo. App., 665 S.W.2d 33, the Missouri Court of Appeals stated the following about Missouri's parallel version of IC 23–1–23–1:

> Although ... § 351.110(1) does require a corporate name to contain the word "corporation," "company," "incorporated," or "limited" or an abbreviation of one of those words, decisions interpreting that section relate only to the secretary of state's discretion in establishing corporate names and the ability of similarly named corporations to challenge the name as confusing. *The section has never been interpreted to require that the corporate name must appear on all signage, letterheads, company forms, phone listings, and the like. Moreover, assuming arguendo that the section has that meaning, its violation could not be said to automatically give rise to anything more than those sanctions which the state may choose to impose. Certainly the loss of all the protections and advantages of the corporate form (among them the fundamental protection of limited liability) cannot be said to spring spontaneously from the failure to comply.*

*Fairbanks, supra,* at 37 (emphasis added).

We find the Missouri court's reasoning persuasive. IC 23–1–23–1(a) does not expressly require that corporate status be indicated in a business' signage or business cards. Too, the remainder of IC 23–1–23–1 addresses the need to have a corporate name that is distinguishable upon the records of the secretary of state from other corporations transacting business in Indiana, and the procedure for obtaining authorization for using an indistinguishable name. One basic principal of statutory interpretation requires that we consider the statute as a whole. *Spaulding v. International Bakers Services, Inc.* (1990), Ind., 550 N.E.2d 307, 309. In doing so here, we are not convinced that IC

23–1–23–1(a) does more than establish administrative procedures for indicating corporate status in the records of the secretary of state. The trial court erred in finding that IC 23–1–23–1 required that Price reveal the body shop's corporate status to Aronson and that the signs, receipts for cash payments, business cards, and other documentation indicate such incorporation.

■ Next, Aronson asserts that Price's failure to file a certificate of assumed name after it changed its name to Shadow's Body Shop justifies piercing the corporate veil. IC 23–15–1–1(a)(1) requires in relevant part that:

> a person conducting or transacting business in Indiana under a name, designation, or title other than the real name of the person conducting or transacting such business ... shall file for record, in the office of the recorder of each county in which a place of business or an office of the ... corporation ... is situated, a certificate stating the assumed name to be used, and ... the address of the corporation's ... principal office in Indiana.

The issue of whether violating IC 23–15–1–1 justifies piercing the corporate veil appears to be one of first impression in Indiana. Our foremost concern when interpreting statutes is to determine and give effect to the true intent of the legislature. *Crowley v. Crowley* (1992), Ind.App., 588 N.E.2d 576, 578.

The purpose of the former version of IC 23–15–1–1 has been construed by our supreme court as follows: "[i]ts obvious purpose is to give information as to the persons who shall be named as defendants and served with process in case suit is brought on a cause of action arising out of any business done in the assumed name, or out of any contracts made in such name." *Humphrey v. City National Bank* (1920), 190 Ind. 293, 305–6, 130 N.E. 273 (holding that the failure to file a certificate of assumed name does not render void an otherwise valid contract). The statute's purpose also has been articulated as being "to protect the public from fraud and imposition by preventing business entities from concealing their identity." *Sheraton Corp. of America v. Kingsford Packing*

*Co., Inc.* (1974), 162 Ind.App. 470, 319 N.E.2d 852, 858.

Because IC 23–15–1–1 is penal in nature and in derogation of the common law, it must be strictly construed. *Id.* In light of the purposes of this statute as articulated by our courts, we conclude that the failure to comply with IC 23–15–1–1 is insufficient, by itself, to justify piercing the corporate veil. If the General Assembly had intended that the corporate veil be disregarded in the event there is a failure to file a certificate of assumed name, it could have specifically provided for such in IC 23–15–1–1.

Aronson relies on *Merriman v. Standard Grocery Co.* (1968), 143 Ind.App. 654, 242 N.E.2d 128, *trans. denied*, in which the plaintiffs brought a personal injury action against a wholly owned subsidiary rather than the lessee-parent corporation. The court of appeals reversed the trial court's refusal to allow plaintiffs to amend their complaints in order to name the parent corporation as a defendant because the parent and subsidiary had an interdependent relationship and the parent failed to file its use of an assumed business name. *Id.* at 131.

*Merriman* is not controlling here. Aronson is not seeking to amend his complaint in order to include a previously unnamed party. Rather, he asserts that Price's failure to file the corporation's use of an assumed name is grounds to hold Price personally liable. While Price's oversight may be grounds for permitting the amendment of a complaint, we disagree with Aronson's theory that the failure to file a certificate of assumed name justifies a total disregard of the corporate form.

The other cases cited by Aronson are similarly distinguishable. For example, in *Sheraton Corp. of America, supra,* this court held that a corporate hotel operator was estopped to deny that it and its franchisee were a single entity for purposes of an unpaid food account. The court's decision was supported by evidence of a contract between the Sheraton hotel chain and the franchise owner, pursuant to which the franchise owner was required to use the name "Sheraton" to refer to its hotel business, and Sheraton was named the exclusive operator of the hotel.

From this evidence, the court concluded that Sheraton falsely represented to Kingsford that it was the owner of the hotel at a time when Sheraton knew that another entity was the owner. This false representation, along with Sheraton's failure to file a certificate of assumed name, was sufficient to estop Sheraton from denying that it was liable for the debt. *Id.* at 857. In the case at bar, there is no evidence that Price made a false representation regarding the identity of the entity with which Aronson was dealing, nor has Aronson put forth any evidence of detrimental reliance.

■ Our inquiry does not end here. In accordance with our standard of review, we must consider all of the evidence presented at trial to determine whether it necessarily leads to a different conclusion than that reached by the trial court. A search of the entire record reveals only the following evidence which may tend to show that Price used the corporate form as a mere subterfuge: (1) Aronson was told that Price was the owner of the body shop; (2) Price was "always signing checks ... and making decisions most of the time that [Aronson] was there." Record p. 145; (3) the signs and business cards did not indicate that the body shop was incorporated; and (4) Aronson was not informed that the body shop was incorporated. We do not think this evidence is sufficient to justify imposing personal liability on Price despite the limited liability protection inherent in the traditional corporate form.

The judgment against Price is reversed and remanded to the trial court for further proceedings not inconsistent with this opinion.

HOFFMAN and GARRARD, JJ., concur.