**Spencer ARONSON, Plaintiff–Appellee below,**

v.

**Kent E. PRICE, Appellant–Defendant below.**

No. 71S03–9412–CV–1240.

Supreme Court of Indiana.

Dec. 20, 1994.

Rehearing Denied May 18, 1995.

James A. Masters, Nemeth, Masters & Leone, South Bend, for appellant, Kent E. Price.

David L. Mirkin, Mirkin Law Offices, P.C., South Bend, for appellee, Spencer Aronson.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

In this case the Court of Appeals affirmed important principles of Indiana corporate law by reversing a trial court judgment which had imposed personal liability on the owner of a corporation for acts of the corporation. *Price v. Aronson* (1994), Ind.App., 629 N.E.2d 268. We agree with the Court of Appeals.

## Facts

On April 6, 1990, Spencer Aronson (plaintiff-appellee below) took his 1957 automobile to what was then known as Corbitt's Body Shop to get an estimate on restoring the car to show condition. Although the estimate did not indicate that the business was a corporation, the body shop was, in fact, owned by Corbitt's Body Shop, Inc., an Indiana corporation. Kent E. Price (defendant-appellant below) and his wife, Sandra, were the sole officers, directors, and shareholders of the corporation.

On June 29, 1990, Aronson drove the car to Corbitt's Body Shop for restoration work to be done based on the April 6 estimate. Sometime between June and October, 1990, the business name of Corbitt's Body Shop was changed to Shadow's Body Shop. Aronson was given a business card reflecting this new name.

During the months that Aronson's car was at the body shop neither Price nor his employees told Aronson that the body shop was incorporated. Additionally, none of the body shop's signs, sales slips, or business cards indicated that the body shop was incorporated.

On October 3 or 4, 1990, Aronson had the car towed from what was then Shadow's Body Shop to Fowler's Custom Paint because it was damaged by work performed on it at Shadow's.

Aronson subsequently brought this negligence and breach of contract action naming Kent E. Price d/b/a Corbitt's Body Shop, Corbitt's Body Shop, Inc., and Shadow's Body Shop as defendants. The trial court entered judgment against Price and Corbitt's Body Shop, Inc., jointly and severally, after a bench trial. The trial court "pierced the corporate veil" which protects the shareholders of Indiana corporations from personal liability for the acts of their corporations, holding Price personally liable because: (1) the sign on the front of the shop, the business cards, and the receipts did not indicate that the business was incorporated which the trial court concluded was required by Indiana Code § 23–1–23–1(a) (1988); [1] (2) neither Price nor his employees informed Aronson that he was dealing with a corporation; and (3) a certificate of assumed name was not filed with the state until May 3, 1991, which the trial court concluded violated Indiana Code § 23–15–1–1 (1993).[2]

Price appealed the judgment entered against him personally.[3] The Court of Appeals reversed the trial court judgment, holding that: (1) Indiana Code § 23–1–23–1(a) does no more than establish administrative procedures for indicating corporate status in the records of the secretary of state; (2) the fact that Aronson was never informed that the body shop was incorporated was not sufficient to justify piercing the corporate veil; and (3) failure to comply with Indiana Code § 23–15–1–1 is insufficient, alone, to justify piercing the corporate veil. *Price*, 629 N.E.2d at 270–71.

Aronson now seeks transfer. He asserts that the Court of Appeals wrongly reversed the trial court's finding that Price should be personally liable for negligence and breach of contract. We agree with the Court of Appeals and grant transfer to approve its decision and to elaborate on its analysis.

[A] person conducting or transacting business in Indiana under a name, designation, or title other than the real name of the person conducting or transacting such business ... shall file for record, in the office of the recorder of each county in which a place of business or an office of ... corporation ... is situated, a certificate stating the assumed name to be used, and ... the address of the corporation's ... principal office in Indiana....

1. Indiana Code § 23–1–23–1(a) provides in part:
   A corporate name:
   (1) must contain the word 'corporation', 'incorporated', 'company', or 'limited', or the abbreviation 'corp.', 'inc.', 'co.', or 'ltd.', or words or abbreviations of like import in another language; and
   2) except as provided in subsection (e), may not contain language stating or implying that the corporation is organized for a purpose other than that permitted by IC 23–1–22–1 and its articles of incorporation....

2. Indiana Code § 23–15–1–1 provides in pertinent part:

3. The corporation has not appealed.

## I

Limitation on the liability of corporate shareholders was not part of our English common law heritage. Model Business Corporation Act Annotated (Third Edition) § 6.22 (Annotation). Rather, it emerged in this country as a new legal tool to help meet the economic challenges of the day. Bernard Schwartz, *Main Currents in American Legal Thought* 121 (1992). By 1840, virtually all state legislatures had determined that the "furthering of capital formation could best be accomplished by encouraging shareholders to invest through limiting their liability." Stephen B. Presser, *Thwarting the Killing of the Corporation: Limited Liability, Democracy, and Economics,* 87 Nw.U.L.Rev. 148, 155 (1992). Historically, the imposition of limited liability was perceived as a means of encouraging the small-scale entrepreneur and of keeping entry into business markets competitive and democratic. *Id.* This rationale gave rise to the fundamental principle of American corporate law that corporate shareholders sustain liability for corporate acts only to the extent of their investment and are not held personally liable for acts attributable to the corporation. *See* E. Merrick Dodd, *The Evolution of Limited Liability in American Industry: Massachusetts,* 61 Harv.L.Rev. 1351, 1378 (1948).

This principle of limited liability of corporate shareholders has been the common law of Indiana at least since 1897.[4] *See Gainey v. Gilson* (1897), 149 Ind. 58, 60–61, 48 N.E. 633, 634. The Indiana General Assembly codified this principle in the course of enacting the Indiana Business Corporation Law in 1986, providing that "a shareholder of a corporation is not personally liable for the acts or debts of the corporation." Ind.Code § 23–1–26–3(b) (1993). At the same time the legislature also codified the common law exception to this principle by providing that "the shareholder may become personally liable by reason of the shareholder's own acts or conduct." *Id.*

While an Indiana court will impose personal liability to protect innocent third parties from fraud or injustice, the burden is on the party seeking to pierce the corporate veil to prove that the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice. *Winkler v. V.G. Reed & Sons, Inc.* (1994), Ind., 638 N.E.2d 1228, 1232 (citing *Gurnik v. Lee* (1992), Ind.App., 587 N.E.2d 706, 710, and *Hinds v. McNair* (1955), 235 Ind. 34, 41, 129 N.E.2d 553, 559).

In deciding whether a plaintiff has met this burden of proof, an Indiana court considers whether the plaintiff has presented evidence showing: (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form. *See Eden United, Inc. v. Short* (1991), Ind.App., 573 N.E.2d 920, 933, *trans. denied; Stacey–Rand, Inc. v. J.J. Holman, Inc.* (1988), Ind. App., 527 N.E.2d 726, 728; *State v. McKinney* (1987), Ind.App., 508 N.E.2d 1319, 1321.

## II

In this case, the specific grounds cited by the trial court for piercing the corporate veil do not overcome the presumption of limited shareholder liability. Furthermore, the plaintiff has failed to meet its burden of proving misuse of the corporate form constituting fraud or promoting injustice.

### A

Plaintiff first contends that the failure of the corporation to include the abbreviation

---

4. Different considerations apply in the context of tax law where exceptions to the doctrine of separate corporate identity more often arise. *See Winkler v. V.G. Reed & Sons, Inc.* (1994), Ind., 638 N.E.2d 1228, 1232, n. 4. Whether a corporation is a separate taxable entity from the indi-

vidual who created it is not the same question as whether the corporation is the individual's alter ego for purposes of piercing the corporate veil to hold the individual liable for the corporation's taxes. *Harris v. United States,* 764 F.2d 1126, 1128 (5th Cir.1985).

"Inc." or other words indicating corporate existence in its name violated Ind.Code § 23–1–23–1 and, therefore, exposed its shareholders to personal liability.

Contrary to plaintiff's contention, Indiana Code § 23–1–23–1 does not require an Indiana corporation to use words designating its corporate form in its signage, business forms, invoices, or business cards. The requirements of this section of the Indiana Code go only to legal requirements of a corporate name for purposes of issuance of a corporate charter by the Indiana Secretary of State. There is no requirement in the corporate code that a corporation must do business under the name by which it was chartered, and we refuse to read any such requirement into the statute. Moreover, as the Court of Appeals pointed out, even if we were to agree with the plaintiff on the meaning of this statute, we would be unwilling to impose personal liability on the shareholders of the corporation solely for this reason in the absence of such a sanction being specifically provided by statute. *See Price*, 629 N.E.2d at 270 (quoting *Fairbanks v. Chambers*, 665 S.W.2d 33, 37 (Mo.Ct.App.1984)).

### B

■ Plaintiff also contends that the failure of the corporation to file an assumed business name certificate with the County Recorder indicating that Corbitt's Body Shop, Inc., was doing business as "Shadow's Body Shop" violated Indiana Code § 23–15–1–1 and, therefore, exposed its shareholders to personal liability.

■ It is not disputed that the corporation failed to file an assumed business name certificate in accordance with the statute. However, as did the Court of Appeals, we conclude that this failure did not serve to impose personal liability on Price. We believe that the legislature intended the assumed business name filing requirement to provide information to litigants and others as to the true party in interest when contracts are made or business is done in an assumed name. *Humphrey v. City Nat'l Bank* (1921), 190 Ind. 293, 305–6, 130 N.E. 273, 277. This requirement has the effect of protecting the public from fraud and imposition by preventing business entities from concealing their identity. *Sheraton Corp. of America v. Kingsford Packing Co.* (1974), 162 Ind.App. 470, 480, 319 N.E.2d 852, 858. We find no basis in law for imposing personal liability on a shareholder for acts of the corporation solely because of the failure of a corporation to file an assumed business name certificate under Indiana Code § 23–15–1–1. No such sanction is provided by statute, and we believe such sanction would be contrary to Indiana Code § 23–1–26–3(b) (1993).[5] Furthermore, in this case the plaintiff has neither alleged nor shown any detrimental reliance on the failure to file the assumed business name certificate.

### C

■ As noted above, we consider proper adherence to corporate formalities in determining whether a plaintiff has met its burden of proof in seeking to impose personal liability on a shareholder for acts of the corporation. Corporate formalities for this purpose include proper corporate filings, the issuance of stock, election of directors and officers, shareholders and directors meetings, resolutions authorizing payments and corporate minutes. Lack of observance of formalities can provide circumstantial evidence of shareholder abuse and shareholder use of the corporation as a conduit for personal affairs. *See Wheeling–Pittsburgh Steel Corp. v. Intersteel, Inc.*, 758 F.Supp. 1054, 1059 (W.D.Pa.1990); *Harrelson v. Soles*, 94 N.C.App. 557, 380 S.E.2d 528, 531 (1989).

Contending that corporate signage and stationery do not contain a corporation's formal name does not establish any lack of adherence to corporate formalities whatsoever since there is no such statutory or com-

---

**5.** Plaintiff continues to rely on *Sheraton Corp.* and *Merriman v. Standard Grocery Co.* (1968), 143 Ind.App. 654, 242 N.E.2d 128, *trans. denied.* We agree with the Court of Appeals that these cases are distinguishable from plaintiff's. In any event, neither of these cases can fairly be read to stand for the proposition that the mere failure to file an assumed business name certificate by itself is enough to impose personal liability upon the corporation's shareholders for acts of the corporation.

mon law requirement. In fact, the evidence here showed that the corporation was in good standing, that Kent and Sandra Price conducted directors and shareholders meetings of the corporation, and that Sandra Price kept records of the meetings and filed annual reports for the corporation. The observance of these corporate formalities helps establish that plaintiff has not met his burden of proof here.

■ The failure to file an assumed business name certificate is a breach of required corporate formalities. However, as noted above, it does not by itself result in the imposition of personal liability on shareholders for corporate acts. In this case it serves only as evidence that the court considers in determining whether the plaintiff has met the burden of proof in establishing misuse of the corporate form constituting a fraud or promoting injustice. None of the other factors which courts consider in deciding whether a plaintiff has met the burden of proof are present in this case. There is no contention or evidence that the business was organized or operated with capital inadequate to meet expected business liabilities. There is no contention or evidence of commingling or that the corporation paid the Prices' personal obligations. There is no contention or evidence that the Prices intended to conceal the corporate form of the business with which plaintiff was dealing, nor has plaintiff put forth any evidence of detrimental reliance. Thus, the only evidence to support piercing the corporate veil present in this case is the failure to observe the corporate formality of filing an assumed business name certificate. As indicated above, such evidence alone is insufficient to impose personal liability on a shareholder. We conclude that the plaintiff here has not met his burden of proof in demonstrating misuse of the corporate form constituting a fraud or promoting injustice and that piercing the corporate veil is therefore unwarranted in this case.

### Conclusion

Accordingly, we grant transfer, reverse the trial court judgment against Price personally, and remand this case to the trial court for further proceedings not inconsistent with this opinion. Ind.Appellate Rule 11(B)(3).

SHEPARD, C.J., and DeBRULER and GIVAN, JJ., concur.

DICKSON, J., dissents with separate opinion.

DICKSON, Justice, dissenting.

Indiana Trial Rule 52(A) sets forth the standard of review which an appellate court must utilize when considering the appeal of a trial court judgment entered after a bench trial. This rule states that "the court on appeal shall not set aside the findings or judgment unless clearly erroneous." T.R. 52(A). *See also Spurlock v. Fayette Federal Sav. & Loan Ass'n* (1982), Ind.App., 436 N.E.2d 811, 815. A trial court's conclusion is clearly erroneous only where the "evidence is without conflict and leads to but one conclusion, which is contrary to that reached by the trial court." *Ransburg v. Kirk* (1987), Ind. App., 509 N.E.2d 867, 872. Furthermore, our examination of the evidence must be in the light most favorable to the judgment. *ITT Indus. Credit Co. v. RTM Development Co.* (1987), Ind.App., 512 N.E.2d 201, 203. Because I conclude that the trial court's findings and conclusions were not clearly erroneous, I respectfully dissent.

The defendant, the Court of Appeals, and the majority view the issue in this case in terms of the propriety of piercing the corporate veil. I perceive it rather to be whether the defendant dealt with the plaintiff on behalf of an undisclosed principal.[1] In fact, neither the plaintiff's complaint nor the initial trial court judgment makes any mention of "piercing the corporate veil." Record at 7–8, 37–44. The trial court found that, prior to and during his dealings with the defendant,

---

1. These are two very different concepts. When courts pierce the corporate veil, they do so because of misconduct by the shareholders, directors, or officers. *See, e.g., Stacey–Rand, Inc. v. J.J. Holman, Inc.* (1988), Ind.App., 527 N.E.2d 726, 728; *Merchants Nat'l Bank & Trust Co. v. H.L.C. Enterprises, Inc.* (1982), Ind.App., 441 N.E.2d 509, 514. However, when an agent is held liable for dealing on the behalf of an undisclosed principal, it is his actions as an agent that impose liability. *See Brown v. Owen Litho Serv., Inc.* (1979), 179 Ind.App. 198, 201–02, 384 N.E.2d 1132, 1135.

the plaintiff was not informed of the existence of a corporate body by any of the employees; that none of the advertising signs indicated a corporate entity; and that none of the forms, invoices, or business cards which the plaintiff received showed any evidence of the existence of a corporate entity. Record at 38. These are facts which are not seriously disputed by the parties. *See* Brief in Support of Petition to Transfer at 7. *See also* Brief in Opposition to Petition to Transfer at 5–6.

Based on this finding, the trial court found that "having failed to disclose from the outset the existence of the corporation, [the defendant] cannot rely on that corporation to escape personal liability in a transaction where, as here, [the plaintiff] was unaware that he was dealing with a corporation." Record at 38. This conclusion, that the defendant dealt with the plaintiff as an agent with an undisclosed principal, was not clearly erroneous and accordingly should be upheld.

In this case, it is clear that the defendant acted as the liaison with the plaintiff. *See* Brief in Opposition to Petition to Transfer at 6. *See also* Record at 107, 285–294, 297–304. Based on this fact and the whole of the record, there seems to be little question that the defendant was the agent of the corporation. *See Gross Income Tax Div. v. Indianapolis Brewing Co.* (1940), 108 Ind.App. 259, 265, 25 N.E.2d 653, 655 (defining an agent as "one who, by the authority of another, undertakes to transact some business or manage some affairs on the account of such other"). In addition, there is little doubt that his agency was undisclosed to the plaintiff. When an agent deals with a third person without revealing that he is representing a principal or the identity of that principal, he will be held liable as the principal. *Merrill v. Wilson* (1855), 6 Ind. 426, 427. *Accord Tolliver v. Mathas* (1989), Ind.App., 538 N.E.2d 971, 976; *Brown v. Owen Litho Serv., Inc.* (1979), 179 Ind.App. 198, 201–02, 384 N.E.2d 1132, 1135.

I would allow the judgment of the trial court to stand.