Donna M. SCHRIBER, Individually and as Personal Representative of the Estate of Earnest Schriber, Appellant–Plaintiff,

v.

ANONYMOUS (Eagle Care, Inc. d/b/a/ Eagle Valley Healthcare Center), Appellee–Defendant.

No. 49A04–0310–CV–514.

Court of Appeals of Indiana.

June 29, 2004.

H. Kennard Bennett, Severns & Bennett, P.C., Indianapolis, IN, Attorney for Appellant.

Susan E. Cline, Julia Blackwell Gelinas, Lucy R. Dollens, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff Donna M. Schriber, individually and as personal representative of the Estate of Earnest Schriber (collectively, the "Estate") appeals the trial court's dismissal of its amended complaint against Appellee–Defendant Anonymous, Eagle Care, Incorporated d/b/a Eagle Valley Healthcare ("Eagle Care Healthcare"). We reverse.

### Issue

The Estate raises two issues, the following one of which we find dispositive: Whether the trial court erred by dismissing the amended complaint for lack of subject matter jurisdiction because Eagle Care Healthcare was not a "qualified healthcare provider" for purposes of the Medical Malpractice Act.[1]

### Facts and Procedural History

In February of 2000, Earnest L. Schriber ("Schriber") was a resident at Eagle Valley Healthcare Center ("Eagle Center"), which is a nursing home facility located in Indianapolis. On February 22, 2000, while a resident at Eagle Center, Schriber sustained serious burns to his back, shoulders, arms, knees, chest, and forehead. As a result, Schriber was transported to St. Vincent Hospital and was treated for his burn injuries, as well as for pneumonia. Schriber died on April 30, 2000 and the Estate was subsequently opened on his behalf.

On January 29, 2002, the Estate filed an amended complaint against Eagle Care Healthcare, alleging claims of negligence, negligence per se, and wrongful death. On April 1, 2002, Eagle Care Healthcare filed a motion to dismiss for lack of subject matter jurisdiction asserting that the Estate had failed to comply with the relevant provisions of the Indiana Medical Malpractice Act (the "Act"). Specifically, Eagle Care Healthcare argued that it was a qualified healthcare provider at all times pertinent to Schriber's injuries and, thus, the Estate was required to file a proposed complaint with the Indiana Department of Insurance ("IDOI"). In response, on April 23, 2002, the Estate filed a proposed complaint for damages with the IDOI.[2]

1. The Estate also argues that the process of determining the qualified status of healthcare providers under the Indiana Malpractice Act is so deficient as to constitute a violation of the Indiana Constitution's due process requirements. However, because of our disposition of the first issue raised by the Estate, we do not address this second issue.

2. The statute of limitations for a medical malpractice claim is two years "after the date of the alleged act, omission, or neglect." See Ind.Code § 34–18–7–1. In the present case,

On August 26, 2002, the trial court conducted a hearing on Eagle Care Healthcare's motion to dismiss. The Chronological Case Summary reveals that, at that hearing, the trial court gave Eagle Care Healthcare sixty days in which to secure an affidavit, if possible, demonstrating that it was covered under the Act. Eagle Care Healthcare sought and received two additional extensions of time to secure evidence regarding its status as a qualified health provider under the Act. On July 14, 2003, the trial court resumed the hearing on Eagle Care Healthcare's motion to dismiss. On August 14, 2003, the trial court granted Eagle Care Healthcare's motion to dismiss, thereby finding that Eagle Care Healthcare was a qualified healthcare provider under the Act. The Estate filed a motion to correct error, which the trial court denied. This appeal by the Estate ensued. Additional facts will be provided as necessary.

### Discussion and Decision

#### I.  Standard of Review

■■■■ On appeal, the Estate argues that the trial court erred by granting Eagle Care Healthcare's motion to dismiss. A motion to dismiss for lack of subject matter jurisdiction presents a threshold question with respect to a court's power to act. *Cmty. Hosp. v. Avant*, 790 N.E.2d 585, 586 (Ind.Ct.App.2003). In reviewing an Indiana Trial Rule 12(B)(1) motion to dismiss for lack of subject matter jurisdiction, the relevant question is whether the type of claim presented falls within the general scope of the authority conferred upon the court by constitution or statute. *Id.* Accordingly, the trial court has wide latitude to devise procedures to discover the facts relevant to jurisdiction and in weighing the evidence to resolve factual

disputes affecting the jurisdictional question. *Id.*

■■■■ The standard of appellate review of a trial court's grant or denial of a motion to dismiss pursuant to Indiana Trial Rule 12(B)(1) is a function of what occurred in the trial court. *Turner v. Richmond Power & Light Co.*, 763 N.E.2d 1005, 1007 (Ind.Ct.App.2002), *trans. denied.* The standard of appellate review is dependent upon: (i) whether the trial court resolved disputed facts; and (ii) if so, whether the trial court conducted an evidentiary hearing or ruled on a "paper record." *Id.* If the facts before the trial court are not in dispute, the question of subject matter jurisdiction is purely one of law and no deference is afforded to the trial court's conclusion. *Id.* The standard of review is de novo. *Id.* In the present case, the facts are not in dispute; rather, it is the inferences to be drawn from those facts that are in dispute. Accordingly, our review is de novo.

#### II.  Analysis

■■■ The Estate argues that the trial court erred by granting Eagle Care Healthcare's motion to dismiss for lack of subject matter jurisdiction because Eagle Care Healthcare was not a qualified healthcare provider in February of 2000, i.e., the time of the incident in question. Indiana Code Section 34–18–8–4 provides, in relevant part, that "an action against a health care provider may not be commenced in a court in Indiana before: (1) the claimant's proposed complaint has been presented to a medical review panel . . .; and (2) an opinion is given by the panel." However, only actions against qualified health care providers are governed by the Act. *See* Ind.Code § 34–18–

---

because the alleged negligent act occurred on February 22, 2000, the statute of limitations for filing the proposed complaint against Ea-

gle Care healthcare expired on February 22, 2002.

3–1 ("A health care provider who fails to qualify under this article is not covered by this article and is subject to liability under the law without regard to this article. If a health care provider does not qualify, the patient's remedy is not affected by this article."). In addition, Indiana Code Section 34–18–3–2 provides that:

> For a health care provider to be qualified under this article, the health care provider or the health care provider's insurance carrier shall:
>
> (1) cause to be filed with the commissioner proof of financial responsibility established under IC 34–18–4; and
>
> (2) pay the surcharge assessed on all health care providers under IC 34–18–5.[3]

■■ In the present case, the Estate contends that the Act does not apply to the case at bar because Eagle Care Healthcare was not a qualified healthcare provider on February 22, 2000. The specific issue before us, which is one of first impression in Indiana, requires us to determine whether a healthcare provider is qualified under the Act when such provider: (1) conducts business and is licensed under one assumed name or designation; (2) is listed in the records of the IDOI as a qualified healthcare provider under a *different* assumed name or designation; and (3) has wholly failed to file a certificate of assumed name pursuant to Indiana Code Section 23–15–1–1 for either assumed name or designation. The undisputed facts relevant to the determination of whether Eagle Care Healthcare is a qualified healthcare provider under the Act are as follows. First, the affidavit of Donald Brown ("Brown Affidavit")—the Officer

Manager of the Patient's Compensation Division of the IDOI—provides, in pertinent part, that:

> 3 . . . . after reviewing the records of the [IDOI] I have determined that there are documents evidencing that from August 1, 1999, through March 1, 2000, Eaglecare, Inc., d/b/a Eagle Valley Meadows f/k/a Eaglecare, Inc., d/b/a Eagle Valley healthcare Center was a qualified health care provider under the [Act.]

Appellant's App. at 18 (material stricken in original). In the Brown Affidavit, the initials "DB" appear directly above the portion of the sentence that has been stricken. *Id.*

Second, in the deposition of Adam Crowe ("Crowe"), the deputy commissioner for the IDOI, the following colloquy occurred:

Q: Let me hand you . . . a copy of [the Brown Affidavit] signed by Don Brown, purportedly signed by Donald Brown. First of all, do you recognize his signature?

[Crowe:] Yes, I do.

Q: And this is his signature?

[Crowe:] I believe so, yes.

Q: There is also a place in paragraph 3 of the affidavit where it looks like it has been crossed out. There are the initials "DB" there. Do you recognize those to be Don Brown's initials?

[Crowe:] I believe so, yes.

Q: Is there anything on this affidavit that you believe to be inaccurate?

[Crowe:] Not from the research on the system that I've done, no.

---

**3.** Thus, the determination of whether a health care provider is "qualified" under the Act is not determined solely by whether the provider has insurance—rather, it depends upon whether the proof of insurance or other proof of financial responsibility has been filed with the IDOI and the surcharge paid. *Shenefield v. Barrette,* 716 N.E.2d 1, 4–5 (Ind.Ct.App. 1999).

Q: It sounds like you yourself have recently done research on the system?

\* \* \* \* \* \*

[Crowe:] I searched, as I described earlier, I searched "Eagle," pulled up all the corresponding entries that the computer gave me and found an entry that was "EAGLE VALLEY MEADOWS," parenthesis, "(EAGLECARE") end parenthesis, which had an insurance policy for August 1, 1999 through March 1, 2000, with DNA.

\* \* \* \* \* \*

Q: Did your records show anything for "Eagle Valley Healthcare Center"?

\* \* \* \* \* \*

[Crowe:] ... There is an entry for "Eagle Valley Healthcare Center" in our system. Insurance coverage from 1997 to 1998. Because there was only one entry, that is the only coverage we show under the name "Eagle Valley Healthcare Center."

*Id.* at 37–38 (capitalization in original). In his deposition, Crowe further testified that the "only way" for the public at large to determine whether a certain healthcare provider is covered under the Act is through an inquiry to the IDOI. *Id.* at 35.

Third, the affidavit of Daniel S. Benson ("Benson Affidavit")—the secretary of Eaglecare, Inc. ("Eaglecare")—provides, in part, that: "After reviewing the corporate records of [Eaglecare,] I have determined that the facility currently known as Eagle Valley Meadows, located at 3017 Valley Farm Road, Indianapolis, Indiana, was formerly known as [Eagle Center.]" *Id.* at 19, ¶ 3. The Benson Affidavit also provides that "Proof of financial responsibility and the appropriate required surcharge were provided to the [IDOI] on behalf of [Eaglecare] d/b/a Eagle Valley Meadows, qualifying the facility under the [Act,] for the period August 1, 1999 through March 1, 2000." *Id.* at ¶ 4. Fourth, in his deposition, Benson testified that Eagle Center

changed its name to Eagle Valley Meadows in December of 1999. *Id.* at 63.

Fifth, the affidavit of H. Kennard Bennett ("Bennett Affidavit")—the attorney for the Estate—provides that: "On May 24, 2001, I telephoned the [IDOI] and spoke with a Don Brown to inquire into whether or not 'Eaglecare, Inc.,' or 'Eagle Valley Healthcare Center' or 'Eagle Valley Health Care' were qualified providers under Indiana's medical malpractice statute for the period of February or March 2000, and was informed by Mr. Brown that they were not." *Id.* at 30, ¶ 2. The Bennett Affidavit further provides that "[Brown] personally inquired of the Indiana Secretary of State's office, and the Marion County Recorder's Office, and was informed that there was no certificate of assumed name filed or recorded with either office for the name 'Eagle Valley Healthcare Center,' nor 'Eagle Valley Meadows.' " *Id.* ¶ 3.

Sixth, the Indiana Department of Health issued a license to "Eagle Valley Healthcare Center," which permitted Eagle Care Healthcare "to conduct and maintain a 120 bed comprehensive care facility." *Id.* at 88. This license was effective from March 1, 1999 to February 28, 2000. *Id.* Seventh, a letter dated January 14, 1999 reveals that EagleCare, Inc., owns fourteen healthcare facilities in ten different Indiana cities, including Eagle Center.

Eighth, an insurance policy between Eaglecare, Inc., and CNA Insurance Companies discloses that Eaglecare, Inc., had patient trust insurance coverage from March 1, 1999 to March 1, 2000 on the following location: "Eagle Valley Healthcare Center[,] 3017 Valley Farms Rd., Indianapolis, IN 46224." *Id.* at 47. Ninth, and finally, there is a change in policy endorsement, which indicates that, from March 1, 1999 to March 1, 2000, EagleCare had chosen to participate in the

Indiana Patient Compensation Fund for all fourteen of its locations.

From all of this evidence, one may discern that, at the time of the incident that resulted in Schriber's injuries, i.e., February 22, 2000, Eagle Valley Meadows, not Eagle Care Healthcare, was a qualified healthcare provider under the Act. The record reveals that the "only way" for a claimant to prove whether a certain healthcare provider is qualified under. the Act is to inquire about the provider's status with the IDOI. Appellant's App. at 35; *see also Shenefield v. Barrette,* 716 N.E.2d 1, 5 (Ind.Ct.App.1999) (recognizing that the IDOI is the legal entity charged with making the determination of whether a certain healthcare provider is qualified under the Act). The evidence also demonstrates that, when the Estate made its inquiry to the IDOI concerning whether Eagle Care Healthcare was "qualified" under the Act, the Estate was informed that Eagle Care Healthcare was not a qualified healthcare provider in February of 2000. In conducting its search, however, the IDOI did inform the Estate that Eagle Valley Meadows was qualified under the Act from the period of August 1, 1999 through March 1, 2000. ·

The evidence further demonstrates that, on February 20, 2000, Eagle Care Healthcare had changed its name to Eagle Valley Meadows. However, the record is devoid of any evidence that Eaglecare filed a certificate of assumed name for its business designation of Eagle Valley Healthcare or the designation, Eagle Valley Meadows. Indiana Code Section 23–15–1–1 provides, in pertinent part, that:

> (a)(2) a corporation conducting business in Indiana under a name, designation, or title other than the name of the corporation as shown by its articles of incorporation ... shall file for record, in the office of the recorder of each county in which a

place of business or an office of the person, limited partnership, foreign limited partnership, limited liability company, foreign limited liability company, corporation, or foreign corporation is situated, a certificate stating the assumed name· or names to be used, and, ... in the case of a corporation, foreign corporation, limited liability company, foreign limited liability company, limited partnership, or foreign limited partnership, the full name and the address of the corporation's ... principal office in Indiana.

\* \* \* \* \* \*

> (e) A corporation, limited liability company, or limited partnership subject to this chapter shall, in addition to filing the certificate provided for in subsection (a), file with the secretary of state a copy of each certificate.

Our supreme court has held that the legislature intended this "assumed business name filing requirement" to provide information to litigants and others as to the true party in interest when contracts are made or business is done in an assumed name. *Aronson v. Price,* 644 N.E.2d 864, 868 (Ind.1994), *reh'g denied.* Accordingly, "[t]his requirement has the effect of protecting the public from fraud and imposition by preventing business entities from concealing their identity." *Id.*

In *Sheraton Corp. of Am. v. Kingsford Packing Co.,* 162 Ind.App. 470, 480, 319 N.E.2d 852, 858 (1974), for example, another panel of this court held that, absent strict compliance with the filing requirements of the assumed business name statute now under consideration, a party doing business with a particular corporation cannot be charged with constructive notice of that corporation's use of an assumed name. In so holding, we noted that:

Thus, it must be concluded upon the facts present herein that [plaintiff] had no knowledge or reasonable means of knowledge that an entity other than [defendant] was the purchaser of its goods. Furthermore, it must also be concluded that this lack of knowledge on [plaintiff's] part is directly chargeable to [defendant] inasmuch as it allowed another entity to use its name in the same business without ensuring that third parties were given actual or constructive notice of such fact.

*Id.*

Likewise, in the present case, because Eaglecare failed to file an assumed business name, we will not charge the Estate with constructive knowledge of Eaglecare's use of the assumed name "Eagle Valley Meadows." As such, the information provided to the Estate by the IDOI, concerning the qualified status of Eagle Valley Meadows did not put the Estate on notice that Eagle Care Healthcare was also a qualified provider under the Act.[4] Accordingly, the totality of this evidence convinces us that Eagle Care Healthcare was not a qualified healthcare provider at the time of the incident in question. As such, the trial court erred by dismissing the Estate's amended complaint for lack of subject matter jurisdiction.[5]

Reversed.

BAKER, J., and FRIEDLANDER, J., concur.

4. Undoubtedly, the more prudent course of action for a claimant, such as the Estate, who is uncertain about the qualified status of a healthcare provider would be to file a proposed complaint, along with a complaint in the trial court. Indeed, our supreme court has addressed a litigant's options for avoiding limitations problems as follows:

> Some patients and their attorneys, of course, tender a complaint to the commissioner when they are uncertain whether a provider has qualified under the Act. We view this as prudent in light of the potential for misinformation conveyed over the telephone or through other informal means. Filing a proposed complaint with the commissioner of insurance tolls the statute of limitations until the commissioner or his agent informs the parties that the provider has not qualified under the Act. The commissioner is the appropriate public officer to make such a determination.

*Guinn v. Light,* 558 N.E.2d 821, 824 (Ind. 1990).

In addition, in *Shenefield,* 716 N.E.2d at 4–5, this Court indicated that when conflicting information is provided to the claimant concerning the qualified status of a physician or provider under the Act, there is an affirmative obligation on the part of the claimant to determine from the IDOI whether the doctor is qualified. Here, however, the IDOI never gave the Estate conflicting information regarding the qualified status of Eagle Care Healthcare.

5. The evidence reveals that Eagle Care Healthcare had a license to conduct and maintain a comprehensive care facility, which was effective from March 1, 1999 through February 28, 2000. Indiana Code Section 16–28–2–1 requires that a corporation obtain a license from the director before operating a health facility. The Indiana Administrative Code provides further that: "Each facility shall conspicuously post the license or a true copy thereof within the facility in a location accessible to public view." *See* 410 I.A.C. § 16.2–3.1–13(n). Moreover, by failing to post a license bearing the name of Eaglecare d/b/a Eagle Valley Meadows, an opportunity (in addition to a legal obligation) was lost to give the public notice that it was the real party in interest, such that a claimant, for purposes of the Act, would know to inquire into the qualified status of Eagle Valley Meadows.