# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**PETER J. RUSTHOVEN**
**T. JOSEPH WENDT**
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**RONALD J. WAICUKAUSKI**
**CAROL NEMETH JOVEN**
Price Waicukauski & Riley, LLC
Indianapolis, Indiana

**JANA K. STRAIN**
Indianapolis, Indiana



FILED
Mar 03 2014, 9:24 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

CBR EVENT DECORATORS, INC., )
GREGORY RANKIN, ROBERT )
COCHRANE and JOHN BALES, )
 )
    Appellants-Defendants, )
 )
        vs. )    No. 49A02-1302-CT-159
 )
TODD M. GATES, )
 )
    Appellee-Plaintiff. )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gerald S. Zore, Judge
Cause No. 49D07-0307-CT-1289

**March 3, 2014**

**OPINION - FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

CBR Event Decorators, Inc. ("CBR") and its individual shareholders Gregory Rankin, Robert Cochrane, and John Bales (collectively, "Shareholders") bring this consolidated appeal, challenging the trial court's award of attorney fees and order requiring $1,000,000 from a letter of credit to be deposited with the trial court clerk. The Appellants raise the following issues for our review: (1) whether, following a decision by this court in a previous appeal in this case, the trial court erred by ordering that the Shareholders be personally liable for attorney fees on a claim against CBR for wrongful stop payment of a check; (2) whether the trial court erred by failing to hold a hearing regarding the amount and reasonableness of attorney fees; (3) whether the attorney fee award of $290,093 was unreasonable; and (4) whether the trial court erred by granting an *ex parte* order requiring $1,000,000 from a letter of credit to be deposited with the trial court clerk. We conclude Shareholders are not personally liable for attorney fees on the wrongful stop payment claim.[1] However, we find the *ex parte* order requiring deposit of $1,000,000 with the trial court clerk was not reversible error. Therefore, we affirm in part and reverse in part.

## Facts and Procedural History

This case—now nearly fourteen years in the making—stems from a contractual dispute between Todd Gates and CBR and Shareholders. In June 2000, Shareholders negotiated to purchase the assets of an event decorating company Gates owned.

---

[1] Because we conclude the trial court abused its discretion by awarding attorney fees against Shareholders, the remaining issues regarding the amount of attorney fees and a hearing thereon are effectively moot. Therefore, we address only the first and fourth issues raised by Shareholders.

2

Shareholders, in preparation for the pending acquisition of assets, created CBR to act as corporate buyer in the transaction and to continue operating as an event decorating company after acquisition of Gates's assets. An asset purchase agreement was signed on behalf of CBR, and the deal was set to close on June 26, 2000. CBR deposited $100,000 in an escrow account as a down payment, and an additional $550,000 was to be paid on a promissory note over a seven-year period.

A check for $100,000 and the signed asset purchase documents were mailed to Gates. Gates signed the documents and returned a copy to Shareholders. The same morning, Shareholders had a meeting with some of Gates's employees, and after that meeting, Shareholders believed Gates had misrepresented the value of the assets. Eventually, payment was stopped on the $100,000 check from CBR, and CBR withdrew the funds from the escrow account and distributed those funds to Shareholders. Attempts between Gates and CBR to renegotiate the purchase agreement were unsuccessful. In August 2000, Gates filed suit against CBR and Shareholders.

Gates's amended complaint asserted claims against both CBR and Shareholders. The amended complaint asserted three causes of action against CBR: (1) breach of the asset purchase agreement; (2) wrongful stop payment of a check; and (3) breach of the promissory note. The amended complaint also asserted two causes of action against Shareholders, as individuals: (1) fraudulent conveyance and (2) wrongful withdrawal of capital (i.e. wrongful transfer or fraudulent transfer). Finally, Gates's amended complaint sought to pierce the corporate veil and impose personal liability on Shareholders for any liability found against CBR. The trial court entered judgment in favor of Gates on all

3

counts and pierced the corporate veil. Only those counts pled against CBR—breach of contract and wrongful stop payment—included a requirement for defendants to pay attorney fees. In March 2011, the trial court approved an agreed order staying execution of the judgment pending appeal. As inducement for this agreed order, Shareholders provided Gates with an irrevocable letter of credit issued by PNC Bank in the amount of $1,000,000.

Shareholders appealed the trial court's judgment, and this court issued a published opinion in CBR Event Decorators, Inc. v. Gates, 962 N.E.2d 1276 (Ind. Ct. App. 2012), trans. denied (herein, "CBR I"). In that prior appeal, Shareholders raised "a single issue on appeal: whether the trial court's unchallenged findings of fact support the court's decision to pierce the corporate veil." Id. at 1281.[2] On this sole issue, CBR I held it was error for the trial court to pierce the corporate veil and hold Shareholders personally liable for judgments against CBR. Id. at 1284.

Immediately following the holding in CBR I, the court made these additional statements:

> We note that CBR does not appeal the judgment against it for breach of contract. The shareholders also do not appeal the judgment against them for fraudulent conveyance, fraudulent transfer, or wrongful stop payment. We therefore affirm in part and reverse in part. We affirm the trial court's judgment against the shareholders for $100,000 for fraudulent conveyance, fraudulent transfer, and wrongful stop payment of a check. We reverse, however, the trial court's judgment against the shareholders in all other respects. Further, we remand to the trial court to determine the portion of attorney fees the shareholders are liable for to Gates as a result of the

---

[2] CBR did not appeal the trial court's judgments against it for breach of contract, breach of promissory note, and wrongful stop payment. Further, Shareholders did not appeal the trial court's judgment that they were personally liable for fraudulent conveyance and wrongful transfer. On appeal, the only issue was whether Shareholders were personally liable for judgments against CBR.

4

wrongful stop payment.

Id. (citation omitted). These supplementary statements at the close of CBR I were the source of some confusion on remand and are at the root of the present appeal.

On remand, Gates sought attorney fees from Shareholders based on his claim of wrongful stop payment. Shareholders opposed Gates's motion for attorney fees, arguing the CBR I holding precluded their personal liability for the wrongful stop payment claim and related attorney fees. Following a hearing on the issue of Shareholders' liability, the trial court issued an order awarding attorney fees in the amount of $290,093 and interest at a rate of 18%. Relevantly, the trial court found:

1. The Court of Appeals [in CBR I] determined that the individual [Shareholders] are liable to [Gates] for the $100,000.00 judgment on the wrongful stop payment, fraudulent transfer and fraudulent conveyance claims.

2. This Court lacks jurisdiction to rehear argument or evidence regarding the merits of the wrongful stop payment, fraudulent transfer and fraudulent conveyance claims and rejects [Shareholders'] request to do so.

Appellant's Appendix at 34. Shareholders filed a motion to reconsider on February 7, 2013, which the trial court denied.

On January 3, 2013, PNC Bank provided Gates with written notice that it would not extend the letter of credit, which was set to expire March 17, 2013. On February 5, 2013, Gates filed a Petition for Emergency Stay, for Deposit of Proceeds and for Hearing. Gates's petition requested an emergency stay of the letter of credit's expiration and also requested a hearing and an order requiring deposit of the $1,000,000 with the trial court clerk. Two days later, the trial court ordered that the funds be deposited with the trial court

clerk pursuant to the terms of the letter of credit, stating it saw "no need for a hearing." Appellant's App. at 36. On February 15, 2013, Shareholders requested a stay of the February 7 order, and that request was granted on March 1, 2013. On February 22, 2013, Gates sent a written demand to PNC Bank for the balance of the letter of credit to be drawn and deposited with the trial court clerk. Accordingly, those funds were deposited with the trial court clerk. This appeal followed.

Discussion and Decision

I. Award of Attorney Fees

A. Standard of Review

Shareholders appeal the trial court's award of attorney fees in favor of Gates. We review an award of attorney fees for an abuse of discretion. Gerstbauer v. Styers, 898 N.E.2d 369, 378 (Ind. Ct. App. 2008). A trial court abuses its discretion when the decision is clearly against the logic and effect of the facts and circumstances or if it misapplies the law. Id.

B. Limited Liability and Award of Attorney Fees

Shareholders contend the trial court improperly determined they were personally liable for attorney fees attributed to the wrongful stop payment claim following this court's decision in CBR I. Indiana follows the American Rule, which requires that generally "a party must pay his own attorneys' fees absent an agreement between the parties, a statute, or other rule to the contrary." R.L. Turner Corp. v. Town of Brownsburg, 963 N.E.2d 453, 458 (Ind. 2012). Relevantly, Indiana Code section 26-2-7-5 provides for attorney fees in an action for wrongful stop payment of a check. However, the wrongful stop payment

6

claim in this case was pled only against CBR, not Shareholders.

A basic precept of corporate law is limited liability. Escobedo v. BHM Health Assocs., Inc., 818 N.E.2d 930, 932 (Ind. 2004); see also Ind. Code § 23-1-26-3. "[T]he fundamental principle of American corporate law [is] that corporate shareholders sustain liability for corporate acts only to the extent of their investment and are not held personally liable for the acts attributable to the corporation." Escobedo, 818 N.E.2d at 932 (quoting Aronson v. Price, 644 N.E.2d 864, 867 (Ind. 1994)). Limited liability may be avoided and individual shareholder liability may be imposed only upon a determination to pierce the corporate veil.[3] Id. at 932-33. Simply stated, Shareholders could only be liable for attorney fees on the wrongful stop payment claim against CBR if the corporate veil was pierced. This court clearly held in CBR I that the trial court's decision to pierce the corporate veil was error. Therefore, Shareholders cannot be personally liable for CBR's wrongful stop payment or attorney fees tied to that claim.

Gates argues the final paragraph of CBR I, quoted above, mandates the result reached by the trial court. As Gates reads this court's prior decision, Shareholders were ordered to pay attorney fees on the wrongful stop payment claim. Gates does not so much as attempt to argue that such a directive could be squared with CBR I's actual holding. Instead, he maintains that regardless of any allegedly incorrect outcome, the legal doctrines

---

[3] "[T]he burden is on the party seeking to pierce the corporate veil to prove that the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice." Aronson, 644 N.E.2d at 867.

7

of res judicata[4] and law of the case preclude both the trial court and this court from addressing the issue of attorney fees. We find Gates's contentions unavailing.

First, we disagree with the premise that CBR I definitively ordered Shareholders personally liable for attorney fees on a judgment against CBR. The final paragraph in CBR I noted that CBR and Shareholders did not appeal a number of judgments against them—again, the only issue presented on appeal was whether the corporate veil was rightfully pierced—and the court purported to affirm those non-appealed judgments. Finally, the court "remand[ed] to the trial court to determine the portion of attorney fees the shareholders are liable for to Gates as a result of the wrongful stop payment." CBR I, 962 N.E.2d at 1184. As demonstrated above, because CBR I held the corporate veil should not be pierced, the portion of attorney fees for which Shareholders are personally liable as a result of the wrongful stop payment claim is none. In reality, CBR I never stated Shareholders were individually liable for any amount of attorney fees, and Gates has simply gleaned such a holding from CBR I where none actually existed.

Even if CBR I could be interpreted as Gates suggests, claim preclusion, issue preclusion, and law of the case do not require us to find Shareholders liable for attorney fees. Indeed, the doctrines of claim preclusion, issue preclusion, and law of the case are

---

[4] Gates's brief refers to "res judicata," which is also known as claim preclusion and is distinct from issue preclusion (also known as collateral estoppel). See Sullivan v. American Cas. Co. of Reading, Pa., 605 N.E.2d 134, 137 (Ind. 1992); see also BLACK'S LAW DICTIONARY 1305-06 (6th ed. 1990) (comparing res judicata and collateral estoppel). However, some Indiana cases have lumped the doctrines of claim preclusion and issue preclusion together under the term res judicata. E.g. Wells Fargo Bank, N.A. v. PNC Bank, N.A., 971 N.E.2d 1216, 1219 ("The doctrine of res judicata consists of two distinct components, claim preclusion and issue preclusion."). Because claim preclusion and issue preclusion are separate doctrines with unique effect, we will refer to them individually in this opinion. Gates's brief is unclear as to whether he means claim preclusion or issue preclusion—or both—apply to this case.

all similar in that they seek to prevent repetitious litigation and promote the finality of judgments.[5] See Becker v. State, 992 N.E.2d 697, 700 (Ind. 2013) (stating claim preclusion and issue preclusion aim to "prevent repetitious litigation of disputes that are essentially the same, by holding a prior final judgment binding against both the original parties and their privies."); Cutter v. State, 725 N.E.2d 401, 405 (Ind. 2000) (stating the purpose of law of the case is to minimize relitigation of issues after resolution by an appellate court and to promote finality and judicial economy). That said, each doctrine is unique and applied under different circumstances. None of those doctrines are applicable under the circumstances of this case.

Claim preclusion and issue preclusion are pertinent only in a subsequent action or separate pending action, not a subsequent appeal in a single pending case. See Sullivan v. American Cas. Co. of Reading, Pa., 605 N.E.2d 134, 137 (Ind. 1992); see also RESTATEMENT (SECOND) OF JUDGMENTS § 17 (1982). Simply stated, the doctrines of claim preclusion and issue preclusion have no applicability where the legal issue involves a prior ruling in the same action. Therefore, neither claim preclusion nor issue preclusion could prevent us from addressing issues raised in or resulting from CBR I.

On the other hand, law of the case is a doctrine used to facilitate the finality of issues decided within the same action. Law of the case provides that an appellate court's determination of a legal issue is binding on the trial court and in any subsequent appeal in the same case and on substantially the same facts. Cutter, 725 N.E.2d at 405. Essentially,

---

[5] Unlike claim preclusion and issue preclusion, which are compulsory, law of the case doctrine is a discretionary tool. Murphy v. Curtis, 930 N.E.2d 1228, 1234 (Ind. Ct. App. 2010), trans. denied.

9

law of the case means all issues decided directly or by implication in a prior decision are binding in all further portions of the same case. Dean V. Kruse Found., Inc. v. Gates, 973 N.E.2d 583, 590 (Ind. Ct. App. 2012), trans. denied. However, only those issues conclusively determined are considered law of the case, and the issue decided in the prior appeal must clearly be the only possible construction of an opinion. Id. Finally, statements that are not necessary in the determination of the issues presented are dicta and do not become law of the case. Id. at 590-91.

The statements in CBR I relied upon by Gates are not law of the case. First, we do not believe Gates's interpretation of CBR I—making Shareholders personally liable for attorney fees on the wrongful stop payment claim—is the only possible construction of the opinion. This is primarily because holding Shareholders personally liable for attorney fees on the wrongful stop payment claim against CBR stands in stark contradiction to the opinion's actual holding which upheld the corporate veil. Moreover, the sole issue presented in CBR I was whether the trial court erred in piercing the corporate veil. The statements relied upon by Gates were unnecessary to the determination of that issue and are merely dicta. Therefore, law of the case is inapplicable here.

Finally, we note that Shareholders did not seek rehearing or transfer following the decision in CBR I. We remind Shareholders' attorneys that where potential ambiguity arises in an appellate opinion, a petition for rehearing via Indiana Appellate Rule 54 is the most appropriate and efficient method of resolving any uncertainty, rather than attempting to sort out an ambiguity with the trial court post-remand. Our ability to address the issue presented in this case is due only to the language in CBR I and particular circumstances

10

rendering law of the case doctrine inappropriate; had CBR I clearly articulated a ruling of attorney fees in favor of Gates, Shareholders may not have enjoyed such a favorable outcome. These matters should not be left to chance.

In sum, the only legal theory under which Shareholders could be personally liable for attorney fees on Gates's wrongful stop payment claim was to pierce the corporate veil, which CBR I clearly held was improper. Neither claim preclusion, issue preclusion, nor law of the case are applicable here, and thus, we are not obligated to uphold the award of attorney fees against Shareholders. The trial court's award of attorney fees was an abuse of discretion.

## II.  Trial Court's *Ex Parte* Order and Deposit of Funds

Finally, Shareholders argue the trial court's order granting Gates's request to deposit the letter of credit funds with the trial court clerk was an improper *ex parte* order. Specifically, Shareholders state that Gates did not make sufficient efforts to notify them of the emergency request for relief and the trial court did not have discretion to order such relief under the circumstances. In response, Gates contends the trial court's order was not necessary to effectuate transfer of the funds to the trial court clerk and that any alleged error was not reversible error. We find Gates's position persuasive.

The terms of the letter of credit provided that in the event PNC Bank gave written notice of non-renewal, Gates

> shall have the right, at any time within 60 days after you receive such written notice, to draw down the then available balance of this letter of credit by providing written demand therefore to us. Upon receipt of such written demand, we will immediately pay the entirety of the unpaid balance of this letter of credit to the clerk of the Marion County Superior Court, to be held

11

> on behalf of the individual defendants, as a cash deposit in lieu of this letter of credit . . . .

Appellant's App. at 203. In a motion before the trial court in March 2013, Shareholders conceded that Gates made a "legitimate demand" under the terms of the letter of credit, referencing Gates's written demand to PNC Bank on February 22, 2013. Appellant's App. at 231. Thus, the entire $1,000,000 was drawn on the letter of credit and deposited with the trial court clerk pursuant to the terms of the letter of credit that were assented to by Shareholders. Shareholders do not dispute that Gates had a right to demand payment of the funds from the letter of credit to the trial court clerk, nor do Shareholders dispute that Gates properly tendered a valid written demand.

"It is well-established that an error based on a lack of notice is subject to the harmless error doctrine, which requires the appellant to demonstrate prejudice as a result of the lack of notice." Adams v. State, 967 N.E.2d 568, 572 (Ind. Ct. App. 2012), trans. denied. The deposit of funds with the trial court clerk was done in accordance with the terms of the letter of credit supplied by Shareholders, and the deposit occurred irrespective of the trial court's *ex parte* order. Shareholders have failed to demonstrate prejudice resulting from the *ex parte* order.

## Conclusion

We hold the trial court abused its discretion by holding Shareholders personally liable for attorney fees on a wrongful stop payment claim against CBR. Further, we conclude the doctrines of claim preclusion, issue preclusion, and law of the case do not require the imposition of those attorney fees. Lastly, the trial court's *ex parte* order

12

requiring $1,000,000 from a letter of credit to be deposited with the trial court clerk was not reversible error.

Affirmed in part and reversed in part.

NAJAM, J., and BARNES, J., concur.