James D. MASSEY and Margaret E. Massey, Appellants–Defendants,

v.

CONSECO SERVICES, L.L.C., Appellee–Plaintiff.

No. 29A05–0610–CV–565.

Court of Appeals of Indiana.

Jan. 22, 2008.

Henry J. Price, Ronald J. Waicukauski, Carol A. Nemeth, Price Waicukauski & Riley, LLC, Indianapolis, IN, Attorneys for Appellants.

Ryan L. Leitch, William P. Means, Riley Bennett & Egloff, LLP, Indianapolis, IN, Scott A. McMillin, Stephen C. Hackney, Kirkland & Ellis LLP, Chicago, IL, Attorneys for Appellee.

## OPINION

MAY, Judge.

James D. Massey appeals from summary judgment for Conseco Services, L.L.C. ("Conseco Services") on its breach of contract claim and the dismissal of his counterclaims.[1] We affirm.

## FACTS AND PROCEDURAL HISTORY

Massey was a member of the board of directors of Conseco, Inc. ("Conseco") from 1994 to 2000 and served on the board's audit committee. Massey was neither an officer nor an employee of Conseco.

From 1996 to 2000, Conseco had a program known as the D&O Loan Program ("Program"). Pursuant to the Program, Conseco made arrangements with several banks to loan money to its directors and officers for the purchase of Conseco stock. Conseco guaranteed the loans. The directors and officers could also borrow money from Conseco Services, a subsidiary of Conseco, to cover the interest owed on the loans from the banks.

Massey participated in the Program from 1996 to 2000 and borrowed about $15 million to purchase Conseco stock. He also signed a promissory note in Conseco Services' favor ("the Note") to cover the interest on his bank loan, which amounted to over $4 million.

By 1997, Conseco had accumulated a significant amount of debt. In 1997, a report by Ray Dirks Research stated Conseco suffered "massive deterioration in cash flow from 1994 through 1996," (Appellant's App. at 838), and opined "Conseco's true operating earnings per share is negative when and if it is properly presented and ... it will worsen rapidly under current management." (*Id.* at 948.) In 1998 and 1999, Colin Devine, an investment analyst with Salomon Smith Barney, published additional reports questioning Conseco's cash flow. According to Massey, Conseco's senior management assured the board of directors these reports were inaccurate.

On April 14, 2000, Conseco acknowledged it had overstated its income on its quarterly financial statements in 1999 by $367.6 million and issued restated earnings. Due to these overstatements, the

---

1. The brief filed for James D. Massey lists him as the only appellant and states it is the "Brief of Appellant." Margaret E. Massey has not filed her own brief, and we therefore do not consider her interests when addressing James' appeal.

Securities and Exchange Commission instituted proceedings that resulted in a cease-and-desist order in 2004. The SEC found:

> Throughout fiscal 1999, Conseco ... made materially false and misleading statements about [its] earnings in Commission filings and in public statements announcing their earnings, overstating [its] results by hundreds of millions of dollars. This massive overstatement occurred primarily because [Chief Financial Officer Rollin] Dick and [Chief Accounting Officer James] Adams conducted a fraudulent accounting scheme....

(*Id.* at 924–25.)

The value of Conseco shares dropped as the maturity date of Massey's Note approached. Massey extended the maturity date by refinancing his Note on November 22, 2000. He stepped down from the board of directors in December of 2000.

Conseco filed for bankruptcy in December of 2002, and Massey's stock became worthless. Conseco restructured its debts, and the bankruptcy court confirmed a plan of reorganization. Conseco alleges it repaid the bank loans in full and is now pursuing its rights as a guarantor against the Program participants in separate proceedings in Illinois.

Conseco Services sued Massey on the Note he executed to cover his interest on the bank loans. Massey asserted several affirmative defenses and counterclaims. Conseco Services filed a motion for partial summary judgment on its own claims and a motion to dismiss Massey's counterclaims. The trial court granted Conseco Services summary judgment on its breach of contract claim and dismissed Massey's counterclaims.

## DISCUSSION AND DECISION

Massey asserts the trial court erred by: (1) concluding the "alter ego" doctrine is inapplicable to this case; (2) dismissing his counterclaim based on the "change of control" provision that appeared in some versions of the Program; (3) rejecting his indemnity defense and dismissing his counterclaim premised on the same facts; (4) dismissing his breach of fiduciary duty counterclaim; (5) rejecting his fraudulent inducement defense and dismissing his counterclaim premised on the same facts; (6) concluding he could not assert a defense based on Regulation U; and (7) concluding he could not assert a defense of failure of a condition precedent.

We review *de novo* a grant of a motion to dismiss for failure to state a claim upon which relief can be granted. *Green Tree Servicing, LLC v. Auditor & Treasurer of Howard County*, 868 N.E.2d 1, 3 (Ind.Ct.App.2007). A grant of such a motion is proper if the allegations in the complaint are incapable of supporting relief under any set of circumstances. *Id.*

In reviewing summary judgment, we apply the same standard as the trial court. *Wright v. American States Ins. Co.*, 765 N.E.2d 690, 692 (Ind.Ct.App.2002). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). "Any doubt as to a fact, or an inference to be drawn, is resolved in favor of the non-moving party," here, Massey. *Sanchez v. Hamara*, 534 N.E.2d 756, 757 (Ind.Ct.App. 1989). The moving party bears the burden of proving there is no genuine issue of material fact; however, once this burden is sustained, the opponent may not rest on the pleadings, but must set forth specific facts showing there is a genuine issue for trial. T.R. 56(E); *Oelling v. Rao*, 593 N.E.2d 189, 190 (Ind.1992). We consider only the evidence designated to the trial court. T.R. 56(H); *Mangold ex rel. Man-*

*gold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind.2001). We affirm summary judgment on any legal basis supported by the designated evidence. *Bernstein v. Glavin*, 725 N.E.2d 455, 458–59 (Ind.Ct.App.2000), *trans. denied* 741 N.E.2d 1248 (Ind.2000). The appellant bears the burden of persuading us the grant of summary judgment was erroneous. *Bank One Trust No. 386 v. Zem, Inc.*, 809 N.E.2d 873, 878 (Ind.Ct.App. 2004), *trans. denied* 822 N.E.2d 975 (Ind. 2004).

### 1. "Alter Ego" Doctrine

■■■ Several of Massey's counterclaims and defenses are based on conduct of Conseco. Massey seeks to hold Conseco Services liable by alleging Conseco Services is the "alter ego" of Conseco. Therefore, as a preliminary matter, we must determine whether this doctrine is available to Massey. We conclude that it is not.

> The legal fiction of a corporation may be disregarded "where one corporation is so organized and controlled and its affairs so conducted that it is a mere instrumentality or adjunct of another corporation." Indiana courts refuse to recognize corporations as separate entities where the facts establish that several corporations are acting as the same entity.

*Oliver v. Pinnacle Homes, Inc.*, 769 N.E.2d 1188, 1191 (Ind.Ct.App.2002) (citations omitted), *trans. denied* 783 N.E.2d

698 (Ind.2002). The party seeking to pierce the corporate veil bears the burden of proving "the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice." *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind.1994).

Although piercing the corporate veil is normally a fact-sensitive inquiry, the trial court did not err by concluding as a matter of law the doctrine is not applicable in this case. Indiana decisions consistently hold the doctrine may be invoked to prevent fraud or unfairness to third parties. *McQuade v. Draw Tite, Inc.*, 659 N.E.2d 1016, 1020 (Ind.1995); *Aronson*, 644 N.E.2d at 867; *Oliver*, 769 N.E.2d at 1191; *Smith v. McLeod Distributing, Inc.*, 744 N.E.2d 459, 462 (Ind.Ct.App.2000). Massey was an outside director, but he was not a third party. He was a director of Conseco and understood the corporate organization of Conseco and Conseco Services. *See McQuade*, 659 N.E.2d at 1020 ("While we have expressed willingness to use our equitable power to disregard the corporate form to prevent fraud or unfairness to *third parties*, we perceive little likelihood that equity will ever require us to pierce the corporate veil to protect the same party that erected it.") (emphasis in original). Nor has Massey designated evidence these corporations abused the corporate form or that such abuse would result in a fraud or injustice to him.[2] Accordingly, the trial

---

**2.** Massey claims the *Aronson* test, which requires the party seeking to pierce the corporate veil to prove (1) misuse of the corporate form and (2) resulting fraud or injustice, applies only when a party seeks to hold individual shareholders liable, citing *Smith*, 744 N.E.2d at 463. However, *Smith* merely holds there is no exclusive list of factors courts may consider in determining whether the *Aronson* test has been met. *Id.* Both prongs of the test must be met. *Escobedo v. BHM Health*

*Assocs., Inc.*, 818 N.E.2d 930, 934–35 (Ind. 2004).

Massey also cites the Hamilton County Circuit Court's order granting partial summary judgment to Conseco Services in similar litigation against Stephen Hilbert, former Chief Executive Officer of Conseco. That order states, "Conseco Services concedes that Conseco, Inc. and Conseco Services are part of a 'single unified organization'. Notwithstand-

court did not err in determining, as a matter of law, that Massey could not treat Conseco Services as the alter ego of Conseco.

### A. *Change of Control*

One of Massey's counterclaims alleges there was a change of control of Conseco, and the Program contained a provision that obligated Conseco to purchase his stock when there was a change of control. Massey acknowledges this claim is not viable against Conseco Services unless he can treat Conseco Services as the alter ego of Conseco. Because the trial court properly concluded the alter ego doctrine is not available to Massey, this counterclaim does not state a claim against Conseco Services, and the trial court did not err by dismissing it.[3]

### B. *Indemnity*

Massey also argues the Conseco bylaws obligate it to indemnify him for litigation arising out of his actions as a director. This claim cannot be brought against Conseco Services because Massey cannot pierce the corporate veil to hold it liable. Massey has not stated a claim against Conseco Services, and the trial court properly dismissed his counterclaim premised on the indemnity provisions of Conseco's bylaws.[4]

### C. *Fiduciary Duty*

In another counterclaim, Massey alleged he "was required to sign a power of attorney authorizing loans under the credit agreements with the banks and the purchase of the stock," (Appellant's App. at 193), which power of attorney created a fiduciary relationship. He does not allege Conseco Services was his attorney-in-fact; to the contrary, it appears the credit agreement required him to appoint Conseco as his attorney-in-fact. Because Massey may not treat Conseco and Conseco Services as the same entity, these allegations do not state a claim against Conseco Services.

The only conduct by Conseco Services referred to in this count of his counterclaim alleges Conseco Services breached a fiduciary duty by negotiating a credit agreement that prohibited Massey from selling the stock for a three-year time period unless the value of the stock exceeded the loan. These allegations are insufficient to state a claim for breach of fiduciary duty because participation in the program was voluntary; Massey could have chosen not to participate if he believed the terms negotiated by Conseco Services were unfavorable. *See Wilson v. Lincoln Federal Sav. Bank,* 790 N.E.2d 1042, 1046–47 (Ind.Ct.App.2003) ("[A] business or 'arm's length' contractual relationship does not give rise to a fiduciary

---

ing this fact, each of Defendants' affirmative defenses fails on its merits, as discussed below." (Appellant's App. at 1470.) As Massey acknowledges, this finding was the basis of neither the trial court's decision nor our decision on appeal. *See Hilbert v. Conseco Services, L.L.C.,* 836 N.E.2d 1001 (Ind.Ct.App. 2005), *trans. denied* 855 N.E.2d 1001 (Ind. 2006), *cert. denied* —— U.S. ——, 127 S.Ct. 237, 166 L.Ed.2d 147 (2006). Accordingly, Massey may not use that finding to preclude Conseco Services from asserting in this proceeding that the corporate veil should not be pierced.

3. Hilbert raised an identical change of control argument in *Hilbert v. Conseco Services,* which we discussed at length and rejected. *See* 836 N.E.2d at 1008–13.

4. For the same reasons, Massey's defense to Conseco Services' complaint, premised on the indemnity provisions of Conseco's bylaws, also fails. Thus, the defense could not preclude summary judgment for Conseco Services.

relationship.... Absent special circumstances, a lender does not owe a fiduciary duty to a borrower.") Therefore, the trial court properly dismissed this counterclaim.

### 2. *Fraudulent Inducement*

■■■ Massey raised fraudulent inducement as an affirmative defense to Conseco Service's breach of contract claim. To the extent Massey's defense of fraudulent inducement refers to conduct of Conseco, the defense fails for the reasons stated above. However, Massey also alleges employees of Conseco Services prepared fraudulent financial reports and press releases for Conseco, which he relied on when he signed the Note in favor of Conseco Services.

> The essential elements of fraudulent inducement ... are no different from any action on fraud. The elements of actual fraud are: (1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of falsity; (3) which caused the claimant to rely upon the misrepresentation to the claimant's detriment.

*Siegel v. Williams,* 818 N.E.2d 510, 515 (Ind.Ct.App.2004).

■■■ The complaining party must have had a reasonable right to rely on the representations. *Westfield Ins. Co. v. Yaste, Zent & Rye Agency,* 806 N.E.2d 25, 31 (Ind.Ct.App.2004), *trans. denied* 822 N.E.2d 970 (Ind.2004).

> The legal obligation that a person exercise the common sense and judgment of which he is possessed is a practical limitation on the actionability of various representations. Where persons stand mentally on equal footing, and in no fiduciary relation, the law will not protect one who fails to exercise common sense and judgment.

*Ruff v. Charter Behavioral Health Sys. of Nw. Ind., Inc.,* 699 N.E.2d 1171, 1175 (Ind. Ct.App.1998) (citations omitted), *trans. denied* 714 N.E.2d 170 (Ind.1999). Whether reliance was reasonable is usually a question for the trier of fact, but when "the evidence is so clear as to be susceptible of only one reasonable inference, it is for the court to determine as a matter of law whether [the party asserting fraud] was justified in relying on the representation and whether he was negligent in doing so." *Plymale v. Upright,* 419 N.E.2d 756, 763 (Ind.Ct.App.1981) (*quoting* 37 C.J.S. *Fraud* § 129 (1943)).

■■■ The trial court found Massey had not relied on any alleged misrepresentations by Conseco Services because Massey was aware of Conseco's financial problems by April of 2000, when Conseco restated its earnings, and his refinancing in November of 2000 ratified his obligation to Conseco Services. We need not consider whether the refinancing ratified his obligation. The evidence designated to the trial court, even when viewed in the light most favorable to Massey, does not create an inference Massey reasonably relied on any representations by Conseco Services.

Massey was a sophisticated businessman with thirty-five years experience in the banking industry. He was a director of Conseco and a member of the audit committee. As a member of the audit committee, Massey had not only the opportunity to discover the nature of Conseco's financial situation, but also a fiduciary duty to oversee its finances. (*See* Appellant's App. at 1026) (Conseco's bylaws state the "Audit Committee shall have general oversight responsibility with respect to the Corporation's accounting and financial reporting activities," and "the Audit Committee shall have unrestricted access, if necessary, to the Corporation's personnel and documents.") Massey acknowledges he was

aware of negative reports about Conseco's finances from outside the corporation as early as 1997. In the absence of any evidence Massey conducted a reasonable investigation into Conseco's financial situation, we cannot say his reliance was reasonable.

Although Massey alludes to evidence he could have designated demonstrating he investigated Conseco's financial situation, he failed to designate it. Conseco Services designated evidence demonstrating it was entitled to collect on the Note. Massey could not rest on his pleadings; he was obligated to designate evidence to demonstrate a genuine issue of material fact. *See Oelling*, 593 N.E.2d at 190.

Massey argues the designated evidence does not demonstrate he breached his fiduciary duty to Conseco, and he directs us to *In re Reliance Securities Litigation*, 135 F.Supp.2d 480, 507 (D.Del.2001) (knowledge of a corporation's financial infirmities may not be imputed to directors, including those on the audit committee, solely by the nature of the positions that they hold). We do not decide whether Massey breached his fiduciary duty to Conseco or whether knowledge should be imputed to him; we merely hold he has not met his burden on summary judgment.[5]

### 3. *Regulation U*

Massey also asserted a defense that the bank loan and the Note in favor of Conseco Services are void because they violated 12 C.F.R. § 221, known as Regulation U. Regulation U provides, "No lender ... shall extend any purpose credit, secured directly or indirectly by margin stock, in an amount that exceeds the maximum loan value of the collateral securing the credit." 12 C.F.R. § 221.3(a)(1). The "maximum

loan value" of margin stock under Regulation U is fifty percent of the margin stock's current value. 12 C.F.R. § 221.7(a). Contracts made in violation of Regulation U are void. 15 U.S.C. § 78cc(b); *Natkin v. Exchange National Bank of Chicago*, 342 F.2d 675, 675–76 (7th Cir.1965).

Hilbert also attempted to raise a Regulation U defense against Conseco Services. He argued the bank loan violated Regulation U and was therefore void. He further argued because the loan was void, no interest could have accrued. We held the cases cited by Hilbert

> would seem to hold that if the banks violated Regulation U, the banks might not be able to enforce the Principal Notes against an unwilling innocent party. But this is not an action by the banks seeking to enforce those notes. This is an action by [Conseco] Services seeking to enforce [the notes for the interest paid by it].

*Hilbert*, 836 N.E.2d 1001, 1017.

■ Massey's argument is slightly different in that he argues the Note held by Conseco Services is also secured by margin stock in a manner that violates Regulation U. However, his argument also fails as a matter of law. The Federal Circuit Courts that have considered the issue have unanimously held there is not a private cause of action under Regulation U. *Id.* at 1016 n. 14; *see also Bassler v. Central National Bank*, 715 F.2d 308, 310, 313 (7th Cir.1983).

Massey argues *Bassler* does not control because he is asserting Regulation U as an affirmative defense rather than as a cause of action. He cites *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 102 S.Ct. 851, 70

---

**5.** The same allegations underlie Massey's counterclaim for fraud. As his counterclaim merely restates a defense that was properly rejected on summary judgment, the trial court did not err by dismissing it.

L.Ed.2d 833 (1982), which involved a contract in violation of federal antitrust and labor laws. Although the laws in question did not create a private cause of action, the Supreme Court held a defense of illegality could be raised. *Id.* at 82 n. 7, 102 S.Ct. 851.

However, federal courts have not consistently recognized an illegality defense when the statute in question does not create a private cause of action.

> But when we ask what is the federal rule on illegality as a contract defense, we find, alas, that the course of decision has not run completely true.... The best generalization possible is that the defense of illegality, being in character if not origins an equitable and remedial doctrine, is not automatic but requires ... a comparison of the pros and cons of enforcement.

*N. Ind. Pub. Serv. Co. v. Carbon County Coal Co.*, 799 F.2d 265, 273 (7th Cir.1986). Regulation U was not promulgated for the "especial benefit" of borrowers. *Johnson v. Republicbank Dallas, N.A.*, 634 F.Supp. 749, 751 (N.D.Tex.1986). Although Regulation U prohibits the extension of credit in violation of the margin rules, Regulation X also makes it unlawful to obtain credit in violation of these rules. *Id.* at 750; 12 C.F.R § 224. These facts militate against permitting an illegality defense based on Regulation U.

Furthermore, some federal courts have explicitly rejected an affirmative defense based on Regulation U, as the same result is sought whether denominated an affirmative defense or a cause of action; the only difference is one of semantics. *Blair v. Bank One, N.A.*, 307 B.R. 906, 909 (N.D.Ill.2004); *Massey v. Conseco, Inc.*, No. 1:03–CV–1701–LJM–VSS, 2004 WL 828229, at *2 (S.D.Ind. Apr. 12, 2004) (noting the court in Conseco's bankruptcy case had held Regulation U could not be assert-

ed as a defense). We find this reasoning persuasive and hold Regulation U provides no defense for Massey. Accordingly, the trial court did not err in rejecting this defense when granting summary judgment for Conseco Services.

### 4. *Failure of Condition Precedent*

██ Finally, Massey claims the failure of a condition precedent bars summary judgment for Conseco Services. Specifically, Massey argues under the terms of the Note, Conseco Services is not entitled to repayment for the interest it advanced until the principal of the loan is paid:

> Notwithstanding any other provision of this Note, ... if [Massey] tenders to [Conseco Services] any payment of interest ... hereunder at a time when any of [Massey's] Program Loans are still outstanding then [Conseco Services] will deliver the amount of the Payment to the Banks to be applied to the Program Loans.... In such event the Payment will not reduce in any manner or serve as a credit against any of [Massey's] indebtedness to [Conseco Services] for principal or interest evidenced by this Note.

(Appellant's App. at 265.)

Conseco, as guarantor of the bank loans, was required to pay the banks. Conseco currently has an action pending in Illinois in which it is seeking repayment of the loans from Massey and the other Program participants. However, counsel for Conseco represented to the trial court in this case that Conseco would not pursue any recovery Conseco Services obtains from Massey. The only evidence in the record on this issue indicates any superior interests have been relinquished, and we cannot say the trial court erred by concluding Conseco Services may attempt to collect on the Note at this time. Accordingly, this

**614**

defense did not preclude the grant of summary judgment for Conseco Services.

For the foregoing reasons, the order of the trial court is affirmed in all respects.

Affirmed.

SHARPNACK, J., and BAILEY, J., concur.