Lydia ESCOBEDO, et al., Appellants (Plaintiffs below),

v.

BHM HEALTH ASSOCIATES, INC., AAA Home Care LLC/Rocky Mountain Home Care, AAA Home Care LLC/Rocky Mountain Home Care, d/b/a BHM Health Associates, Inc., Leona Bonczek, Donna Huddleston, and Lee Huddleston, Appellees (Defendants below).

No. 45S03–0403–CV–123.

Supreme Court of Indiana.

Dec. 7, 2004.

Nathaniel Ruff, Merrillville, IN, Attorney for Appellants.

Leona Bonczek, James L. Clement, Jr., Donna Huddleston, James A. Greco, Merrillville, IN, Attorney for Appellees.

On Petition To Transfer from the Indiana Court of Appeals, No. 45A03–0211–CV–383

SULLIVAN, Justice.

Employees of BHM Health Associates, Inc., a now-defunct corporation, seek to "pierce the corporate veil" and recover two weeks' unpaid wages from BHM's individual shareholders. We affirm the trial court's judgment that there is no basis under the law for "piercing the corporate veil" here because the evidence does not meet the two-prong test that the corporate form was so ignored, controlled, or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice.

**Background**

BHM Health Associates, Inc. ("BHM") was a home nursing care business, clients of which were on Medicare. Defendants Bonczek and Huddleston were 50% equal shareholders, officers, and directors of BHM. BHM did not pay the employees their wages for the last two weeks of January, 1997, nor did it pay union dues for that time period. Plaintiffs, former employees of BHM and the unions representing them, sued for the unpaid wages, statutory penalties,[1] and union dues.

During its existence, BHM had struggled financially. The Internal Revenue Service had threatened to close BHM because it had failed to forward to the IRS past and present payroll tax obligations exceeding $200,000.00. Bonczek and Huddleston had personally guaranteed the payment of that arrearage in order to keep the business open. At the end of 1996, Defendants negotiated the sale of BHM to Rocky Mountain Home Care and executed an Asset Purchase Agreement on February 14, 1997, making it effective as of February 1, 1997. It appears that Rocky Mountain Home Care created AAA Home

---

1. The Indiana Code provides that an employer that fails to pay wages to an employee when due is subject to liquidated damages for each day the amount remains unpaid equal to 10% of the amount due, not to exceed double the amount of wage due. Ind.Code § 22–2–5–2 (2004).

Care LLC ("AAA"),[2] an Indiana corporation, to purchase BHM's assets. In January, 1997, BHM made payroll payments for the work performed from January 1 through 15, 1997, and also paid $70,000.00 to the IRS. As noted above, the employees were not paid by BHM for the last two weeks of January.

After acquiring the assets of BHM, AAA operated the business. According to the trial court, "AAA treated the [p]laintiffs as new employees in every way. AAA considered this a new business and one whose employees were not represented by the [u]nion, as had been BHM.... AAA decided to give the new employees a hiring bonus. AAA made it clear that the bonus was strictly at its discretion. The bonus was meant to keep the employees happy and from going elsewhere. The hiring bonus was equal to 70% of the wages that should have been paid [to] the [p]laintiffs at the end of January, [1997,] but were not paid to them." App. at 13.

Plaintiffs sued BHM, AAA Home Care LLC/Rocky Mountain Home Care, AAA Home Care LLC/Rocky Mountain Home Care, d/b/a BHM, Lee and Donna Huddleston, and Leona Bonczek, seeking unpaid wages, statutory penalties, and unpaid union dues.[3] The trial court entered judgment against BHM for unpaid wages, statutory penalties, and union dues, but it dismissed all claims against Bonczek, Hud-

dleston, and AAA Home Care LLC/Rocky Mountain Home Care. Plaintiffs appealed and the Court of Appeals reversed part of the trial court's judgment and held Bonczek and Huddleston individually liable on the judgment. *Escobedo v. BHM Health Associates, Inc.,* 798 N.E.2d 220, 224 (Ind. Ct.App.2003). Bonczek and Huddleston sought transfer to this Court. We previously granted transfer, 812 N.E.2d 798 (2004), and now affirm the judgment of the trial court.[4]

## Discussion

### I

■ In this case, the plaintiffs' sole theory of recovery against Bonczek and Huddleston[5] is that they are entitled by law to "pierce the corporate veil" of BHM and hold its shareholders, Bonczek and Huddleston, personally responsible for BHM's failure to pay the employees' wages for the last two weeks of January, 1997. In *Aronson v. Price,* this Court discussed the rationale for and history of the general rule that individual shareholders of a corporation are not personally responsible for the obligations of the corporation. 644 N.E.2d 864, 867 (Ind.1994). In particular, we pointed out that "the fundamental principle of American corporate law [is] that corporate shareholders sustain liability for corporate acts only to the extent of their investment and are not held personally liable for the acts attributable to the cor-

2. Plaintiffs initially brought suit against AAA Health Care, but that was a mistake, and the parties stipulated that the proper name is AAA Home Care LLC.

3. Lee Huddleston was dismissed as a defendant.

4. As noted in the text, the trial court dismissed plaintiffs' claims against AAA. Plaintiffs appealed this determination, but the Court of Appeals affirmed the judgment of the trial court. *Escobedo,* 798 N.E.2d at 223. Plaintiffs did not challenge this determination

by means of a Petition to Transfer. Nevertheless, once transfer is granted, this Court has jurisdiction over all issues in the appeal as if it was initially filed in this Court. Ind. Appellate Rule 58(A). In this case, we dispose of this claim by summarily affirming the opinion of the Court of Appeals on this issue. *See* App. R. 58(A)(2).

5. As such, we express no opinion about any other theory of liability on the part of Bonczek and Huddleston that might have been available to the plaintiffs.

poration." *Id.* This principle has been codified by the Legislature in our State's corporate code. Ind.Code § 23–1–26–3(b) (2004).[6]

 Because of the bedrock nature of the principle of limited shareholder liability, the burden on a party seeking to "pierce the corporate veil" is severe. Such a party may only recover from a shareholder if the party proves by a preponderance of the evidence "that the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice." *Aronson,* 644 N.E.2d at 867 (citing *Winkler v. V.G. Reed & Sons, Inc.,* 638 N.E.2d 1228, 1232 (Ind. 1994)) (citing in turn *Hinds v. McNair,* 235 Ind. 34, 129 N.E.2d 553, 559 (1955); *Gurnik v. Lee,* 587 N.E.2d 706, 710 (Ind.Ct. App.1992)). Caselaw sets forth certain guideposts for helping make this determination: (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice, or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form. *Aronson,* 644 N.E.2d at 867 (citations omitted).

This case was tried to the court, and in such a circumstance, we defer to the trial court's findings of fact and will reverse only if clearly erroneous. Ind. Trial Rule 52(A) ("On appeal of claims tried by the court without a jury ... the court on appeal shall not set aside the findings or judgment unless clearly erroneous...."); *Yanoff v. Muncy,* 688 N.E.2d 1259, 1262 (Ind.1997); *Estate of Reasor v. Putnam County,* 635 N.E.2d 153, 158 (Ind.1994).

Two trial court findings of fact are important to this issue:

9. For a couple of years, BHM had been in serious financial trouble, and the Internal Revenue Service (IRS) had threatened to close BHM due to past and present payroll tax obligations which exceeded $200,000.00. In order to continue the operation of BHM, Bonczek and Huddleston were required to personally guaranty [sic] the payment of the arrearage, and BHM had been making monthly payments of $30,000.00 towards said arrearage.

15. In anticipation of the sale, Bonczek and Huddleston paid on debts of BHM that Rocky Mountain would not assume instead of paying the Plaintiffs their wages. The debts that they paid included some $70,000.00 to the IRS for employee withholding taxes for which Bonczek and Huddleston had agreed they would be personally responsible. BHM had no assets left after the sale to AAA Health Care/Rocky Mountain Home Care.

App. at 11, 13.

The trial court concluded:

Plaintiffs failed to present evidence which allows the Court to engage in a careful review of the relationship to de-

---

**6.** Different considerations apply in the context of tax law where exceptions to the doctrine of separate corporate identity more often arise. *See Indiana Dep't of State Revenue v. Safayan,* 654 N.E.2d 270 (Ind.1995). Whether a corporation is a separate taxable entity from the individual who created it is not the same question as whether the corporation is the individual's alter ego for purposes of "piercing the corporate veil" to hold the individual liable for the corporation's taxes. *Harris v. United States,* 764 F.2d 1126, 1128 (5th Cir.1985).

termine whether undercapitalization existed; whether there was an absence of corporate records; whether there were fraudulent representations; whether the corporations were used to promote fraud and injustice or illegal activities; whether there was payment by the corporation of individual obligations; whether there was commingling of assets and affairs; whether there was a failure to observe required corporate formalities; and whether there were any other acts or conduct which ignored controlled or manipulated the corporate form. As to BHM there is only evidence that an overpayment on payroll tax arrearage was made while the January 16 through January 31 payroll was not. This payment was not on Huddleston and Bonczek's personal taxes, but on the corporate payroll taxes that were due and owing. The fact that this payment benefited Huddleston and Bonczek as they were guarantors on this debt does not change the nature of the obligation from a corporate one to an individual one.

App. at 17.

The Court of Appeals, however, found it appropriate to impose liability on Bonczek and Huddleston personally. Its reasoning was as follows:

Bonczek and Huddleston were the sole shareholders of BHM and designated $100,000 salaries for themselves. It is abundantly clear that these salaries were subsidized by their decisions to forego BHM's tax obligations. As such, there is a direct nexus between Bonczek and Huddleston's salaries and their personal guarantee of BHM's tax arrearages.

Because Bonczek and Huddleston effectively absconded with BHM employee wages to pay off the arrearage—a debt that arose at least in part from their efforts to subsidize larger salaries for

themselves—it would promote substantial justice to deny them the protection of BHM's corporate status. Accordingly, we reverse the decision of the trial court and extend the trial court's finding of BHM's liability to Bonczek and Huddleston, personally, jointly, and severally.

*Escobedo v. BHM Health Associates, Inc.,* 798 N.E.2d 220, 223 (Ind.Ct.App.2003) (footnote omitted).

We conclude that the Court of Appeals was wrong both as to procedure and law.

■ In reaching the conclusion that it did, the Court of Appeals appears to have disregarded the trial court's findings in favor of findings of its own. A trial court's findings of fact should be set aside only if clearly erroneous, "when the record contains no facts to support them either directly or by inference." *Estate of Reasor,* 635 N.E.2d at 158. The trial court made no findings that the salaries of Bonczek and Huddleston "were subsidized by their decisions to forego BHM's tax obligations" and the record contains evidence that Bonczek and Huddleston did not always draw their salary. Tr. at 60; Huddleston Dep. at 27. Huddleston said she mortgaged her home to pay the rest of the tax liability and, to the best of her knowledge, no company money was used to pay the loan from February, 1996, to February, 1997. Given these facts in the record, and in the absence of any trial court findings on the subject, the standard of appellate review does not permit us to find that Bonczek and Huddleston failed to pay tax withholdings to subsidize their salaries.

Even if such a finding were permissible, it would not, standing alone, justify "piercing the corporate veil." As set forth above, corporate law permits the corporate form to be disregarded and personal liability imposed only where (1) the corporate

form is so ignored, controlled, or manipulated that it is merely the instrumentality of another, and (2) the misuse of the corporate form constitutes a fraud or promotes injustice. *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind.1994). The Court of Appeals did not use this two-prong standard. It held merely that the law permitted the corporate form to be disregarded to "promote substantial justice." *Escobedo*, 798 N.E.2d at 223. This is not the same as misuse of the corporate form to promote injustice. And there is nothing in either the findings of the trial court or the Court of Appeals that would support a conclusion that Bonczek and Huddleston so ignored, controlled, or manipulated the corporate form that it was merely their instrumentality. The tax arrearage was a corporate debt; the personal guaranty of Bonczek and Huddleston did not change the debt from a corporate to an individual one. And the fact that BHM paid more than the usual monthly payment to the IRS at the end of January, 1997, is an inadequate reason to disturb the trial court's findings.

## II

■ In their brief filed in the Court of Appeals, plaintiffs raise an argument captioned, "The Bonus Paid by AAA Did Not Constitute Payment of Back Wages." Br. of Appellants at 18. The Court of Appeals did not address this argument and the plaintiffs renew it in their Brief in Response to Appellees' Petitions to Transfer.[7] To the extent we understand plaintiffs' contention on this point, it is that (1) the trial court concluded that AAA paid the plaintiffs 70% of their unpaid wages, thereby reducing the total obligation of the defendants by that amount, and (2) that this conclusion was erroneous because the 70% payments were "hiring bonuses," not back wages. In fact, the trial court did not hold that the 70% payments were back wages; it held, as plaintiffs argue should be the case, that the 70% payments constituted hiring bonuses with respect to which BHM (the only defendant with liability) was not entitled to credit. This can be seen most clearly by comparing the schedule setting forth the amounts held by the trial court to be owed by BHM to the employees with the schedule setting forth the amounts plaintiffs claim they are owed. The two schedules are identical.

## Conclusion

Having previously granted transfer, we summarily affirm the opinion of the Court of Appeals as to the issue discussed in footnote 4 and affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, J., concur.

BOEHM, J., concurs with separate opinion.

RUCKER, J., concurs in result.

BOEHM, J., concurring.

I concur in the majority's holding that facts sufficient to pierce the corporate veil are not established. The Court of Appeals reversed the trial court on the basis that it would be inequitable to permit the corporate officers to escape liability for discharging a liability they had guaranteed as individuals, if it had the effect of diverting limited assets otherwise available for other creditors, including the plaintiffs. I agree that the facts as found by the trial court would support such a theory of recovery

---

7. Because under Indiana Appellate Rule 58(A), once transfer is granted, this court has jurisdiction over all issues in the appeal as if it was initially filed in this court, the procedure used here by the plaintiffs to raise this issue is appropriate as a matter of appellate procedure.

except for one point. The debt discharged was to the Internal Revenue Service for past payroll taxes. If the nature of that obligation rendered the IRS a preferred creditor vis-à-vis claims for wages for the period immediately preceding collapse of the corporation, the plaintiffs here suffered no loss by the payment of the debt to the IRS. Perhaps this was the reason no theory of self dealing by corporate officers or directors, breach of fiduciary duty, fraudulent transfer or fraud on creditors was advanced. In any event, the facts are sufficiently murky that I concur in affirming the trial court.