**CANAL INSURANCE COMPANY,**
**Plaintiff/Counter–Defendant,**

v.

**MONTELLO, INC., Defendant/Third–**
**Party Plaintiff/Counter–**
**Claimant,**

v.

**Hartford Financial Services Group, Inc.,**
**Continental Casualty Company, Hous-**
**ton General Insurance Company, Na-**
**tional Indemnity Company, Scottsdale**
**Insurance Company, & Twin City Fire**
**Insurance Company, Third–Party De-**
**fendants.**

Case No. 10–CV–411–JHP–TLW.

United States District Court,
N.D. Oklahoma.

Sept. 30, 2011.

James Edward Green, Jr., Jed Wade Isbell, Conner & Winters, LLP, Tulsa, OK, Richard Earl Rush, William James Rogers, Thomson Rhodes & Cowie PC, Pittsburgh, PA, Robert D. Moseley, Jr., Smith Moore Leatherwood LLP, Greenville, SC, for Plaintiff/Counter–Defendant,

Andrew Stuart Hartman, Jack Cameron Moore, Hartman, Blackstock & Moore, Tulsa, OK, Molly Jeannette Mrowka, Hartman Blackstock & Moore, San Francisco, CA, for Defendant/Third–Party Plaintiff/Counter–Claimant.

Roger Neal Butler, Jr., Secrest Hill Butler & Secrest, Jason Travis Seay, Reagan Leigh Madison, Michael Lee Carr, Holden & Carr, Tulsa, OK, Charles F. Morrissey, Wayne S. Karbal, Karbal, Cohen, Economou, Silk & Dunne, LLC, Brian C. Coffey, William M. Cohn, Cohn, Baughman & Martin, Chicago, IL, Patrick Michael Ryan, Paula M. Jantzen, Ryan Whaley Coldiron Shandy PLLC, Don Mark Vaught, Linda Gensler Kaufmann, Rodney Lynn Cook, Jennings Cook & Teague PC, Oklahoma City, OK, Third–Party Defendants.

## OPINION & ORDER

JAMES H. PAYNE, District Judge.

Before the court is Third–Party Defendant Hartford Financial Services Group, Inc.'s ("Hartford's") Motion to Dismiss Montello, Inc.'s Third Party Complaint (Docket No. 60, hereinafter "Motion to Dismiss") and Brief in Support (Docket No. 61), Defendant/Third–Party Plaintiff Montello, Inc.'s Response to the Motion to Dismiss (Docket No. 82), and Hartford's Reply to Montello's Response (Docket No. 86). Also before the court is Hartford's Motion to Strike Portions of Montello, Inc.'s Third Party Complaint (Docket No. 62, hereinafter "Motion to Strike"), in which Hartford adopts its argument in support for its Motion to Dismiss. The

Motion to Strike is fully briefed, each of the parties relying upon their arguments in support of or against the Motion to Dismiss. *See generally* Docket Nos. 83, 87. Therefore, the court's ruling on the Motion to Strike will mirror its ruling on the Motion to Dismiss. For the reasons cited herein, Hartford's Motion to Dismiss and Motion to Strike are DENIED IN PART and GRANTED IN PART.

## FACTS and PROCEDURAL HISTORY

This case was instigated as a declaratory judgment action by Plaintiff/Counter–Defendant Canal Insurance Company ("Canal") against Defendant/Counter–Claimant/Third–Party Plaintiff Montello, Inc. on June 25, 2010. Docket No. 2. Montello responded by filing (a) an Answer to Canal's Complaint (Docket No. 20), (b) a counterclaim against Canal for declaratory judgment and Breach of Contract (Docket No. 21), and (c) a third-party complaint against a number of third-party defendants, including Hartford and its subsidiary Third–Party Defendant Twin City Fire Insurance Company ("Twin City"), requesting a declaratory judgment against the Third–Party Defendants (Docket No. 22). Hartford did not answer the Third–Party Complaint and instead filed this Motion to Dismiss, pursuant to Fed.R.Civ.P. 12(b)(6). Docket No. 60.

Montello "was a distributor of products used in the oil-drilling industry." Montello's Answer to Canal's Complaint at 2, Docket No. 20. One product distributed by Montello for a period of time was "a drilling mud additive that was asbestos." *See id.* Montello has now "been sued by many individuals who were allegedly exposed to asbestos through Montello's products." *See id.* The parties refer to these numerous lawsuits brought by individuals against Montello as the "Underlying Litigation." *See, e.g., id.* The Underlying Litigation has prompted Montello to seek liability coverage from the group of insurers involved in this case, most[1] of whom are alleged to have insured Montello during the time period it distributed products containing asbestos. *See* Third–Party Complaint at 3–4, 8, Docket No. 22; Counterclaim at 2, Docket No. 21. In essence, this case is one in which the parties are seeking declaratory judgments regarding which of them, if any, must "foot the bill" for the costly and expansive[2] asbestos litigation in which Montello must defend itself.

Unlike the majority of the insurance companies in this case, Hartford is not alleged to have insured Montello during the time period that Montello sold products containing asbestos.[3] Instead, Mon-

---

**1.** *See infra* n. 3.

**2.** In its Third–Party Complaint, Montello relates that,

> Montello is presently named in hundreds of pending liability suits in various states, alleging damages, including personal injury, and wrongful death and other damages, as a result of alleged exposure to products allegedly manufacturer [*sic*], distributed, sold or otherwise put into the stream of commerce by Montello in the State of Oklahoma, and elsewhere. Montello continues

| Time Period | Insurance Company |
|---|---|
| December 1968–December 1974 | Continental Casualty Company/ "CNA" |
| December 1978–March 1981 | Houston General Insurance Company |
| March 1, 1981–March 1, 1982 | Canal Insurance Company |

to be sued for liability in Oklahoma and other states.... To date, Montello has incurred substantial damages because of investigating, defending against, and paying damages resulting from the underlying litigation.

Third–Party Complaint at 7, Docket No. 22.

**3.** A compilation of Montello's allegations in the Counterclaim (Docket No. 21 at 2) and Third–Party Complaint (Docket No. 22 at 8) yields the following schedule for which party insured Montello at which time:

| | |
|---|---|
| March 1982–March 1983 | Twin City Fire Insurance Company |
| March 1, 1983–March 1, 1985 | Canal Insurance Company |
| March 1985–March 1986 | Scottsdale Insurance Company |

tello alleges that Hartford is subject to suit as a result of its ownership of Twin City, which directly insured Montello between March 1982 and March 1983. *See generally* Third–Party Complaint at 9–14, Docket No. 22. To this end, Montello alleges that Twin City is a "mere shell or conduit for its insurance business directed to and derived from Montello's [*sic* ] and its other insureds" and that "an injustice will occur if the fiction of corporate separateness between Hartford and Twin City is not disregarded. *See id.* at 13. Alternatively, Montello argues that Hartford is liable for Twin City's debts based on an agency theory. *See id.* at 14. Unsurprisingly, Hartford opposes these propositions, and argues that Montello has failed to state a claim under the pleading standards delineated in Fed.R.Civ.P. 8(a) and 9(b). *See* Motion to Dismiss at 7, Docket No. 60.

## DISCUSSION

■ When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted. A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face" and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* (citation omitted). For the purpose of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant. *Id.* However, a court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee County Bd. of County Comm'rs,* 263 F.3d 1151, 1154–55 (10th Cir.2001). Montello makes alternative allegations stating its ability to bring a case directly against Hartford: (1) that Hartford and Twin City are alter egos of each other, therefore the corporate veil may be pierced to hold Hartford vicariously liable for any of Twin City's liabilities (*see* Third Party Complaint at 9–14, Docket No. 22), and (2) that Hartford and Twin City are "agents, partners, joint ventures, or co-conspirators of each other" (*id.* at 14). The court will address these arguments in turn.

I. Alter–Ego Liability

A. Choice of Law

■ The first step in any choice of law analysis is to determine whether there is a conflict of laws. The law of both Indiana, the state in which Twin City is incorporated, and Oklahoma, the state in which this action was brought, potentially apply to this case. If there is no conflict between the laws of the two states, the court will apply Oklahoma law. If there is a conflict between the two laws, the court will look to Oklahoma choice of law rules to determine whether the application of Indiana or Oklahoma law is appropriate.

■ Analysis of the laws of Indiana and Oklahoma reveal that there is a conflict of law between the states regarding the requirements for piercing the corporate veil.[4] Oklahoma law states, "One cor-

---

Third–Party Defendants National Indemnity Company (movant in the Motion for Judgment on the Pleadings, *see* Docket Nos. 88, 90, 91) and Hartford (movant in the Motion to Dismiss *sub judice* ) are not alleged to have directly insured Montello.

4. Generally, a parent company is not liable for the acts of its subsidiaries. *See United States v. Bestfoods,* 524 U.S. 51, 61, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998). However, un-

poration may be held liable for the acts of another under the theory of alter-ego liability if (1) the separate existence is a design or scheme to perpetuate a fraud *or* (2) one corporation is merely an instrumentality or agent of the other." *Gilbert v. Sec. Fin. Corp. of Okla.*, 152 P.3d 165, 175, 2006 OK 58, ¶¶ 22–23 (citing *Gibson Prod. Co., Inc. of Tulsa v. Murphy*, 100 P.2d 453, 458, 1940 OK 100, ¶ 36) (emphasis supplied). Oklahoma law also includes a list of nine factors[5] that courts may consider when determining whether to hold one corporation liable for the acts of another corporation—the factors "hinge primarily on control." *Id.* at 175, 2006 OK 58, ¶ 23 (citing *Oliver v. Farmers Ins. Group of Cos.*, 941 P.2d 985, 987, 1997 OK 71, ¶ 8). As seen *supra*, Oklahoma law is stated in the disjunctive, requiring *either* a showing fraud or that one corporation is merely the instrumentality of another.

 In contrast, Indiana law is stated in the conjunctive: a party seeking to pierce the corporate veil of an Indiana corporation must prove "by a preponderance of the evidence 'that [1] the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another, *and* [2] that the misuse of the corporate form would constitute a fraud or promote injustice.' " *Escobedo v. BHM Health Assocs., Inc.*, 818 N.E.2d 930, 933 (Ind.2004) (citing *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind.1994) (citing extensive line of supporting caselaw)) (emphasis supplied); *see also Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 504 (Ind.Ct.App.2007) ("A party seeking to pierce the corporate veil bears the burden of establishing that the corporation was so ignored, controlled, or manipulated that it was merely the instrumentality of another *and* that the misuse of the corporate form would constitute a fraud or promote injustice.") (citing *Gurnik v. Lee*, 587 N.E.2d 706, 710 (Ind.Ct. App.1992)) (emphasis supplied). Similar to Oklahoma, Indiana law delineates eight "guideposts"[6] courts may consider when

der certain circumstances delineated by state law, parent companies can be held liable for the debts of subsidiaries. This upward transfer of liability is referred to as "piercing the corporate veil." Oklahoma and Indiana law provide different tests for when it is appropriate to "pierce the corporate veil," and those laws are at issue in this motion.

**5.** Under Oklahoma law, "[t]he factors for determining if one corporation may be held liable for the acts of another . . . . include: (1) whether the dominant corporation owns or subscribes to all the subservient corporation's stock, (2) whether the dominant corporation and subservient corporations have common directors and officers, (3) whether the dominant corporation provides financing to the subservient corporation, (4) whether the subservient corporation is grossly undercapitalized, (5) whether the dominant corporation pays the salaries, expenses, or losses of the subservient corporation, (6) whether most of the subservient corporation's business is with the dominant corporation or the subservient corporation's assets were conveyed from the dominant corporation, (7) whether the dominant corporation refers to the subservient corporation as a division or department, (8) whether the subservient corporation's officers or directors follow the dominant corporation's directions, and (9) whether the corporations observe the legal formalities for keeping the entities separate." *Gilbert*, 152 P.3d at 175, 2006 OK 58, ¶ 23 (citing *Oliver v. Farmers Ins. Group of Cos.*, 941 P.2d 985, 987, 1997 OK 71, ¶ 8).

**6.** The eight factors considered under Indiana law include: "(1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice, or illegal activities; (5) payment by the corporation or individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form." *Escobedo*, 818 N.E.2d at 933 (citing *Aronson*, 644 N.E.2d at 867).

determining whether to pierce the corporate veil. *Escobedo*, 818 N.E.2d at 933 (citing *Aronson*, 644 N.E.2d at 867).

■ There is a clear distinction between Oklahoma and Indiana law regarding the piercing of the corporate veil: Oklahoma law requires the party attempting to pierce the corporate veil to demonstrate *either* (1) the corporate scheme is a design to perpetrate a fraud *or* (2) one corporation is merely an instrumentality of the other while Indiana law requires the plaintiff to meet the more onerous standard of demonstrating *both* (1) one corporation was merely an instrumentality of another, *and* (2) the misuse of the corporate form would "constitute a fraud *or* promote injustice." *See id.; Gilbert*, 152 P.3d at 175, 2006 OK 58, ¶ 22. Montello correctly states that neither Oklahoma nor Indiana law require the plaintiff to demonstrate fraud because Oklahoma's rule is stated in the disjunctive and Indiana law requires an allegation of fraud *or* injustice. However, this similarity is insufficient to establish that the laws are "similar" for the purposes of choice of law standards. Indiana law clearly places upon the party seeking to pierce the corporate veil the more onerous burden of showing both the "instru-mentality" prong of the test and that the misuse of the corporate form would "constitute fraud or promote injustice." This court notes that application of Indiana's more onerous burden while interpreting a pleading under Rule 12(b)(6) standards could result in a different outcome, i.e. dismissal of the claim under Indiana law, and allowing the claim to proceed under Oklahoma law. Because the difference between the conjunctive and disjunctive could be dispositive on a 12(b)(6) motion, the court finds that the laws of Oklahoma and Indiana conflict.[7]

■ Having found that the laws of Oklahoma and Indiana conflict, the court's next step is to determine which law applies to resolve this motion. In diversity actions, the choice of law is determined by the law of the forum state, in this case Oklahoma. *Elec. Distrib. Inc. v. SFR, Inc.*, 166 F.3d 1074, 1083 (10th Cir.1999) (When "making a choice of law determination, a federal court sitting in diversity must apply the choice of law of the forum state in which it is sitting."). As it appears that Oklahoma courts have not yet determined the issue of what state's law to apply when determining whether to pierce the corpo-

---

7. To make the argument that the laws of Oklahoma and Indiana are similar, Montello relies on *Yoder v. Honeywell, Inc.*, a Tenth Circuit case. In *Yoder*, the Tenth Circuit analyzed whether Delaware or Colorado law applied to the issue of corporate veil piercing. *See Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1220 (10th Cir.1997). The Tenth Circuit found that the laws of Delaware and Colorado were similar, despite recognizing that "Delaware may require somewhat more to pierce a corporate veil." *Id.* Delaware law was stated in the disjunctive and did not require a showing of fraud; plaintiff is required "show fraud or 'that the parent and the subsidiary operated as a single economic entity' and 'that an overall element of injustice or unfairness' is present." *Id.* (citing *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 793 (Del.Ch.1992)). Colorado law listed ten factors to "consider in determining whether subsidiary is instrumentality of parent" and also required consideration of whether there was an element of injustice. *Id.* (citing *Lowell Staats Mining Co. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1262 (10th Cir.1989)). *Yoder* is distinguishable in that neither the laws of Delaware nor Colorado involved corporate veil-piercing tests stated in the *conjunctive* as Indiana's is stated. Furthermore, there is no indication that Delaware's "somewhat" more burdensome standard would be dispositive to the court's ruling. Indiana's law, requiring the plaintiff to prove that the misuse of corporate structure constitutes fraud or promotes injustice, when placed in contrast to Oklahoma's law which has no such requirement, is substantially more burdensome than Oklahoma law. *Yoder* does not apply to the facts of this case.

rate veil, this court must decide the conflict of law issue as it believes the Oklahoma Supreme Court would decide it. *See Wammock v. Celotex Corp.*, 835 F.2d 818, 820 (11th Cir.1988). The Northern District of Oklahoma recently issued an opinion dealing with the precise issue of how Oklahoma courts would determine the applicable law when presented with a conflict of law regarding alter-ego liability. *See generally Tomlinson v. Combined Underwriters Life Ins. Co.*, 2009 WL 2601940 (N.D.Okla.) (unpublished). The court begins by citing the Restatement (Second) of Conflict of Laws, which provides: "The local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to the corporation for assessments or contributions and to its creditors for corporate debts." *See id.* at *2 (quoting RESTATEMENT (SECOND) CONFLICT OF LAWS § 307 (1971)) (noting that "[m]any jurisdictions have cited § 307 as indicating that the law of the state of incorporation governs veil piercing claims) (collecting cases). This court agrees with the *Tomlinson* analysis:

> Although ... Oklahoma courts have not addressed application of § 307 in the veil-piercing context, Oklahoma courts have previously followed other provisions of the Restatement (Second) of Conflicts of Laws.... Plaintiff has cited no cases indicating that the Oklahoma Supreme Court would disregard § 307 in determining which state law to apply. Accordingly, based on citation to Restatement (Second) of Conflicts of Laws in other circumstances, the Court finds

that the Oklahoma Supreme Court would follow § 307 in holding that the state of incorporation's law applies to issues of piercing the corporate veil.

> . . . .

> Further supporting the Court's conclusion is the fact that the majority of jurisdictions addressing this question have also applied the law of the state of incorporation to veil-piercing issues.

*Id.* at *2–*3 (citations omitted) (collecting cases). Following the well-reasoned analysis found in *Tomlinson*, this court concurs that Oklahoma courts would follow the Restatement (Second) of Conflict of Laws § 307, which provides that when a conflict of laws arises with regard to piercing the corporate veil, the law of the state of incorporation will be applied to determine whether piercing the corporate veil is appropriate.[8] Therefore this court finds that Indiana law applies to determine whether the corporate veil of Twin City, a corporation incorporated under the laws of Indiana, should be pierced.

## B. Applicable Pleading Standard

The next issue to determine is whether, for purposes of the Fed.R.Civ.P. 12(b)(6) motion *sub judice*, Montello's Third–Party Complaint is subject to evaluation under a the heightened pleading standard pursuant to Fed.R.Civ.P. 9(b). Generally, to bypass a motion to dismiss based on Rule 12(b)(6), a plaintiff must only make a "short and plain statement" of the grounds for the court's jurisdiction and the claim alleged. Fed.R.Civ.P. 8(a)(1–2). However, when

---

**8.** This finding comports with United States Supreme Court precedent known as the "internal affairs doctrine," which recognizes that "only one State should have the authority to regulate a corporation's internal affairs-matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders-because otherwise a corporation could be faced with conflicting demands." *Id.* (citing Restatement (Second) Conflict of Laws § 302 cmt. b (1971)); *see also CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 91, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987) ("It is an accepted part of the business landscape in this country for States to create corporations, to prescribe their powers, and to define the rights that are acquired by purchasing their shares.").

making allegations of fraud or mistake, the pleader "must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). Hartford has argued that Montello has failed to state a claim because it has not complied with the heightened pleading standard applicable to allegations of fraud pursuant to Rule 9(b).

As noted previously, to pierce the corporate veil under Indiana law, the plaintiff must show that, "[1] the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another, *and* [2] that the misuse of the corporate form would constitute a fraud *or* promote injustice." *Escobedo v. BHM Health Assocs., Inc.,* 818 N.E.2d 930, 933 (Ind.2004). While the conjunctive nature of the test requires the plaintiff to show both elements to pierce the corporate veil, the plaintiff is not required to specifically plead that the misuse constituted fraud, because it may alternatively allege that the misuse promoted injustice. *See Fairfield Dev., Inc. v. Georgetown Woods Sr. Apartments Ltd.,* 768 N.E.2d 463, 473 n. 1 (Ind. Ct.App.2002) (recognizing that under Indiana law, plaintiff need not state a claim for fraud if it sufficiently alleges that corporate misuse "promotes injustice").

Recognizing this distinction in Indiana law, the court in *Ketchem v. Am. Acceptance, Co., LLC* noted that Rule 9(b)'s heightened pleading standard only applies when a plaintiff attempts to pierce the corporate veil by alleging fraud. *See* 641 F.Supp.2d 782, 787 n. 1 (N.D.Ind.2008). If the plaintiff exclusively attempts to state a claim by alleging that the misuse of the corporate structure "promotes injustice," then the heightened pleading standard is inapplicable because there is no allegation of fraud to invoke Rule 9(b). *See id.* ("Some jurisdictions apply the heightened pleading standard of Rule 9(b) where veil piercing claims are based on allegations of fraud, necessitating the pleading of facts which give rise to a strong inference that the defendant acted with fraudulent intent. [Plaintiff's] claims are not premised on fraud and so are subject to the more lenient pleading requirements of Rule 8(a)(2).") (internal citation omitted). Like the plaintiff in *Ketchem,* Montello has not alleged that Hartford's misuse of the corporate identity constituted fraud; it has exclusively based its claim for alter-ego liability on the allegation that Hartford's misuse of the corporate form promotes injustice. *See* Third–Party Complaint at 9–14, Docket No. 22 (alleging only that "injustice will occur" if Twin City's corporate veil is not pierced). Accordingly, Montello's claim of alter-ego liability is "subject to the more lenient pleading requirements of Rule 8(a)(2)." *See Ketchem,* 641 F.Supp.2d at 787 n. 1.

C. Sufficiency of the Pleadings

The final determination to be made with regard to Montello's claim for alter-ego liability against Hartford is whether Montello has sufficiently stated a claim under Rule 8(a)(2) pleading standards and Indiana law. Again, under Indiana law, Montello must plead both prongs of the test used to determine whether a corporation's veil may be pierced: first, that "the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of the other," and second, that the "misuse of the corporate form would constitute fraud or promote injustice." *Escobedo,* 818 N.E.2d at 933.

 With regard to the first prong of Indiana's test, Montello alleges that

32. Hartford and Twin city are alter egos of each other that share a unity of interest and ownership and operate as a single enterprise for purposes of the imposition of liability herein . . .

. . .

b. Hartford, as Twin City's ultimate parent company, uses Twin City as a mere conduit through which it conducts insurance business in states in which the Hartford is not admitted to conduct any business whatsoever . . .

. . .

k. Twin City and Hartford completely disregard appropriate legal formalities and fail to maintain arm's length relationships in their dealings with one another in that Hartford conducts and controls all of the most basic insurance functions of Twin City with respect to insurance contracts like the one at issue here (including contract drafting, marketing, sales, underwriting, claims adjustment, and related litigation), without entering into any written agreements with Twin City in those regards, and without any input or approval by Twin City in those regards.

. . .

p. By choosing the insureds which [*sic*] whom Twin City contracts under Hartford's policies nominally issued by Twin City, Hartford effectively controls the premium revenue Twin City will derive from such policies. By choosing which claims it will honor or reject, Hartford effectively controls the claim costs that Twin City will incur for claims made against its insureds under such policies.

. . .

r. .. Hartford, as the parent, dictates every facet of Twin City's business, from broad policy decisions to routine matters of day-to-day operations.

Third–Party Complaint ¶ 32(b), (k), (p), (r), Docket No. 22. Montello has clearly alleged that Hartford ignores the corporate form such that Twin City is merely an instrumentality of Hartford. Therefore, the court finds that these allegations are sufficient to state a claim under the first prong of Indiana's test.

 With regard to the second prong of Indiana's test, Montello's allegations are not as clear:

32. Hartford and Twin City are alter egos of each other that share a unity of interest and ownership. . . .

. . .

b. . . . Hartford, as Twin City's ultimate parent company, uses Twin City as a mere conduit through which it conducts insurance business in states in which the Hartford is not admitted to conduct any business whatsoever, much less admitted to conduct the business of insurance; and *Hartford attempts to shield itself from liability* based upon Twin City's activities in states in which Twin City engages in the business of insurance at Hartford's behest and under its complete domination and control.

. . .

33. Upon information and belief, Montello alleges that *an injustice will occur* if the fiction of corporate separateness between Hartford and Twin City is not disregarded. Montello contends that the Court should not permit Hartford to *shield itself from contract liability* behind Twin City's corporate shell, on the ground that Twin City and not Hartford, is the only nominally named insurer on the policy.

*Id.* ¶¶ 32(b), 33 (emphasis added). The sufficiency of these allegations to state a claim for alter-ego liability is a much closer issue. Because Montello does not allege fraud in the Third–Party Complaint, these allegations can only be interpreted as an attempt to state a claim under the "promotes injustice" portion of Indiana law.

■ In *Sea–Land Services, Inc. v. The Pepper Source*, the Seventh Circuit interpreted the meaning of "promotes injustice" within the substantially similar[9] corporate veil-piercing law of Illinois. *See generally* 941 F.2d 519 (7th Cir.1991). The court found that merely stating that one would be unable to fully recover its damages was insufficient to state a claim under the "promotes injustice prong of the test," reasoning that if that were sufficient, every claimant for corporate veil-piercing would satisfy the standard. *See id.* at 522–23. After a thorough analysis of existing case law, the Seventh Circuit concluded:

> [T]he courts that properly have pierced corporate veils to avoid "promoting injustice" have found that, unless it did so, some "wrong" beyond a creditor's inability to collect would result: [e.g.,] ... a parent corporation that caused a sub's liabilities and its inability to pay for them would escape those liabilities [if the corporate veil were not pierced] ...

*Id.* at 524 (summarizing fact scenario found to "promote injustice" from *In re ContiCommodity Servs., Inc., Securities Litigation*, 733 F.Supp. 1555, 1565 (N.D.Ill.1990)). Like the case referenced in Sea–Land, Montello alleges that Twin City is merely a nominal corporation operated by Hartford for the purpose of shielding Hartford from liabilities sustained with respect to Twin City insurance policies. See Third–Party Complaint at 10, 13, Docket No. 22. Montello's claims essentially allege that Hartford is misusing Twin City's corporate form for the improper purpose of shielding itself from liability for which it is responsible. Such a "wrong" is a sufficient allegation to state a claim pursuant to Rule 8(a)(2) pleading standards and the second prong of Indiana's test.

Therefore, this court finds that Montello has sufficiently pleaded information to support its claim for alter-ego liability under Indiana law. Accordingly, Hartford's Motion to Dismiss Montello's claim for alter-ego liability, stated in paragraphs 32 and 33 of the Third–Party Complaint, is DENIED. Further, Hartford's Motion to Strike paragraphs 32 and 33 of the Third–Party Complaint is likewise DENIED.

## II. Agency Liability

■ As an alternative to its alter-ego theory of liability, Montello has alleged that "Twin City and Hartford are agents, partners, joint ventures or co-conspirators of each other and ... were acting within the scope of its authority as such and with the permission and consent of each of the other." Third–Party Complaint ¶ 34, Docket No. 22. Montello concludes that Twin City acted as Hartford's agent. *Id.* To provide a factual basis for this allegation of agency, Montello essentially alleges the same factual basis as that of its alter-ego claim: that "Hartford, not Twin City is the actual insurer that engages in the core business of insurance with respect to the policy at issue" in a manner that in-

---

9. Illinois' test for piercing the corporate veil states,

a corporate entity will be disregarded and the veil of limited liability pierced when two requirements are met:

[F]irst, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist; and second, circumstances must be such that adherence to the fiction of separate corporate rate would sanction a fraud or promote injustice.

*Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569–70 (7th Cir.1985) (quoting *Macaluso v. Jenkins*, 95 Ill.App.3d 461, 50 Ill.Dec. 934, 420 N.E.2d 251, 255 (Ill.App.Ct. 1981)). This test is substantially similar to that utilized in Indiana, as it contains two similar prongs and is stated in the conjunctive.

volves the misuse of the corporate form. *Id.*

The court is aware of precedent in which a parent company may be held liable for the wrongful actions of their subsidiaries based on an agency theory. *See, e.g., Esmark, Inc. v. Nat'l Labor Relations Bd.*, 887 F.2d 739, 756–757 (7th Cir.1989) ("[A] parent corporation may be held liable for the wrongdoing of a subsidiary where the parent directly participated in the subsidiary's unlawful actions. . . . [In such cases] [t]he owner's liability was based on its control of its subsidiaries' actions from 'behind the scenes.' Thus the parent was not held 'directly liable'; it was liable derivatively for transactions of its subsidiary in which the parent interposed a guiding hand.") (internal citations omitted). However, such precedent is distinguishable.

The precedent recognizes that a parent company may be held liable for the wrongdoing of a subsidiary when the parent participated in that wrongful action. In contrast, Montello has alleged no wrongful action on the part of the subsidiary Twin City. Montello states a claim for declaratory judgment against Twin City and Hartford, and such action by its very nature demonstrates that wrongful action on the part of Twin City has yet to take place. If it had, Montello would assert an action for breach of contract instead of a declaratory judgment. For this reason, the court finds that Montello has failed to state a claim for relief against Hartford based on an agency theory.

Furthermore, analysis of the factual claims alleged in support of Montello's agency theory demonstrates that the claim is in fact merely a re-allegation of Montello's alter-ego claim. The factual allegations stated by Montello in support of its agency claim are in fact supportive of a claim for alter-ego liability: Montello essentially alleges that Twin City was merely an instrumentality of Hartford, and that Hartford utilized the corporate structure of Twin City to operate in states where Hartford "may not be admitted to conduct insurance business." *See* Third–Party Complaint ¶ 34, Docket No. 22 (generally alleging many of the same facts as are alleged in Montello's claim for alter-ego liability, *see id.* ¶¶ 32–33). These factual allegations support a claim for corporate veil piercing, not agency liability. As the court has already determined that Montello has stated a claim for alter-ego liability against Hartford, the agency theory is superfluous in addition to failing to state a claim.

Therefore, Hartford's Motion to Dismiss Montello's alternative claim against Hartford based on agency theory, stated in paragraph 34 of the Third–Party Complaint, is GRANTED. Accordingly, Hartford's Motion to Strike paragraph 34 of Montello's Third–Party Complaint is likewise GRANTED.

## CONCLUSION

For the reasons cited herein, Hartford's Motion to Dismiss (Docket No. 60) is DENIED IN PART and GRANTED IN PART. Montello's claim against Hartford based on agency, as contained in paragraph 34 of the Third–Party Complaint, is DISMISSED. Hartford's Motion to Strike (Docket No. 62) is likewise DENIED IN PART and GRANTED IN PART. Paragraph 34 of the Third–Party Complaint is hereby struck from the record.

IT IS SO ORDERED.